### In re John W. FOSTER and Myrtha D. Foster, Debtors.

### Bankruptcy No. 80–02197–HS.

United States Bankruptcy Court,
S. D. Texas,
Houston Division.

March 17, 1981.

Jane Ford, Ford & Ventura, Houston, Tex., for debtors.

William E. Heitkamp, Houston, Tex., Trustee.

## MEMORANDUM OPINION

JOHN R. BLINN, Bankruptcy Judge:

On February 26, 1981, the Chapter 13 plan of John W. and Myrtha D. Foster came on for confirmation. The plan met all requirements for confirmation and was recommended for confirmation by the Trustee. However, on its own motion the Court noted the plan proposed to make post-confirmation payments on residential mortgages outside the plan.[1] After stating reasons in the record, the Court ruled from the bench confirmation would be denied because of the payments outside the plan. The Court indicated a written opinion detailing the reasoning would follow and this is that opinion.

While many other plans past and pending have specified similar treatment on secured claims, this Court has always questioned whether payments outside a plan do not in fact undermine fundamental Chapter 13 policies. Case law on the parallel issue of unsecured claims condemns outside-the-plan payments. *In re Blevins*, 1 B.R. 442 (Bkrtcy.S.D.Ohio 1979); *In re Tatum*, 1 B.R. 445 (Bkrtcy.S.D.Ohio 1979); *In re Crago*, 4 B.R. 483 (Bkrtcy.S.D.Ohio 1980); *In re Weeden*, 7 B.R. 106, 6 B.C.D. 1309 (Bkrtcy. D.R.I.1980); *In re Dziedzic*, No. 80–00897– HS, 9 B.R. 424 (S.D.Tex. March 6, 1981). However, those courts were primarily addressing "classification of claims"; i. e., whether the debtor could pay certain unsecured claims at a higher rate than provided for other seemingly similar claims. While indicating a preference for inclusion of all creditors in the plan, those cases were not dispositive of secured claims, which are theoretically paid in full whether within or without the plan.

Secured and unsecured claim payments are treated similarly in the Bankruptcy

1. Galbreath Mortgage Company has the first lien on the debtors' homestead; Reagan Commerce Bank holds a second lien.

Code in one respect: nowhere in the Code is there any statement whether either can be handled outside the plan. Courts allowing such treatment have relied on the negative pregnant of § 1325(a)(5), which uses the language "each allowed secured claim provided for by the plan." Judge Jennings in *In re Wittenmeier*, 4 B.R. 86, 6 B.C.D. 827 (Bkrtcy.M.D.Tenn.1980) deduced from this that there may be secured claims not provided for by the plan; he also interpreted the absence of any mandatory provision for inclusion to mean that no such requirement could be read into the Code. 4 B.R. 86, 6 B.C.D. 827 at 828. *Collier on Bankruptcy* reached the same result by reasoning that a Chapter 13 plan may, but need not modify secured claims; if a debtor does not modify an allowed secured claim, the debtor may deal with it outside the plan. 5 *Collier on Bankruptcy*, § 1325.01 at 1325–20 (15th Ed., 1980). However, Collier's so concludes based on its reading of the legislative history, which this Court believes fails to support the Collier's interpretation. All that the House Judiciary Committee noted[2] is that the trustee is designated as a disbursing agent unless the plan provides otherwise. A plan can specify means and amount of payments on secured claims (i. e. "in-plan payments") while leaving the debtor the responsibility as disbursing agent of physically paying the creditors.[3]

Thus no clear authority exists on whether plans must extend to all claims, and a court's interpretation of the Code must rely on policy analysis. Even courts that have held outside payments may be made have recognized the many problems that can be created. First and foremost is that the court's supervision of the plan is jeopar-

dized. *In re Hines*, 7 B.R. 415, 6 B.C.D. 1356 (Bkrtcy.D.S.D.1980). (See also *In Matter of Berry*, 5 B.R. 515 (Bkrtcy.S.D.Ohio 1980) for a discussion on the necessity for supervision.) Second, in the event the debtor defaults on outside payments, the creditor would have two options: proceeding against the debtor in state court, which could create havoc with the delicate balance of budget and plan payments that forms a plan, or seeking enforcement in the bankruptcy court on an obligation which is arguably no longer within that court's jurisdiction.[4] Third, trustees may even be entitled to a fee on payments outside the plan. For example, *Hines, supra*, held that such payments are subject to the 10% fee, which appears to either be a windfall to the trustee or a recognition that the fee may be earned if difficulties occur. Finally, the court's ability to assess and confirm a Chapter 13 plan is hampered if debtors are allowed not only to deal with creditors outside the plan, but effectively shield from the court's scrutiny the status or even continued existence of the relationship.[5]

In counterpoint to these court-recognized problems, attorneys for debtors have argued that requiring all payments within the plan will harm rather than help the debtor's rehabilitation. They are especially concerned that the 10% payment to the trustee—necessarily subtracted from the amount paid on unsecured claims—will jeopardize confirmation of a plan in the case where the percentage to be paid on unsecured claims is reduced to insignificance. However, as reflected above, the trend in case law has been in favor of the trustee receiving a fee no matter how pay-

2. H.R.Rep.No. 95–595, 95th Cong., 1st Sess. (1977) at 430, U.S.Code Cong. & Admin.News 1978, p. 5787.

3. *In Matter of Centineo*, 4 B.R. 654, 6 B.C.D. 445 (Bkrtcy.D.Neb.1980) held that "under the plan, the debtor may make payments either to the trustee or directly to creditors." 4 B.R. 654, 6 B.C.D. 445 at 445. A subsequent case, *Hines, supra*, misread *Centineo* to authorize payments outside of the plan.

4. Not to mention the practical difficulties involved in enforcing such an action even if the bankruptcy court has jurisdiction. For example, would the creditor have to join the trustee as a necessary party?

5. *Tatum, supra*, raised the additional question of the dischargeability of debts that are not covered by the plan. While theoretically this issue should not arise with secured claims, the line dividing the secured from the unsecured portion of a claim is not always so permanently fixed as to rule out controversy.

ments are made, so creditors with unsecured claims are not uniquely disadvantaged by fees for payments outside the plan.[6] More importantly, a plan that is so borderline that the trustee's surcharge eliminates a meaningful payment on the unsecured claims probably should not be confirmed at all.[7] Furthermore, it is the cases where confirmation is a question mark that are most likely to spawn defaults; thus, they should be closely monitored by the court through its officers.

Debtors also argue that outside payments on residential mortgages should be allowed as an exception to other secured claims since the obligation continues for many years after the plan expires, and it makes no sense for the trustee to serve as a temporary superintendent. This view fails to consider the purpose of a Chapter 13 proceeding. The bankruptcy court, through the standing trustee, is involved in a comprehensive restructuring of the debtor's finances, not negotiations with select creditors. Before a plan is approved, both the court and trustee must examine the debtor's income, household and personal expenses, and motivation and ability to conform to the proposed plan. For the court to rehabilitate a debtor within a brief three-year period, the court must have complete control over all the obligations of the debtor for that time. A debtor who chooses to file a Chapter 13 plan should recognize that it is not a trivial matter or stop-gap measure to deal with one or two creditors, but an alternative to a Chapter 7 liquidation. The bankruptcy court must be permitted to rehabilitate the debtor as the court in its experience finds is in the best interests of all parties. It does not have to risk the success of a plan on the gamble that the debtor has chosen the right financial problems to bring before the court.

For all of these reasons the court now goes one step beyond Judge Sidman in *Blevins*, who stated that:

.... All claims should, and perhaps must be treated within the terms of a proposed plan, unless substantial justification is provided for exclusion of a claim from the plan provisions. 1 B.R. 442 at 444.

Time has now provided a better perspective on Chapter 13, and it is now obvious that no justification exists for treating claims outside the plan. It should be noted that contrary to the debtor's arguments, requiring payments inside the plan does not create unnecessary hardship. The debtor will in no way be affected—plan payments will remain the same. The creditor whose secured claim is now treated within rather than outside the plan is better off—should trouble arise, the creditor immediately turns to the bankruptcy court. The trustee is also better off—supervision of the plan in its entirety is now possible, and the trustee will be reimbursed through the fee for handling any difficulty. Only the creditors with unsecured claims will be disadvantaged if in fact they receive less than they would if secured claims were paid outside minus the trustee's fee. However, even these creditors will have the advantage of improved plan supervision, which in many cases may make the difference between a plan being preserved rather than destroyed by actions beyond the control of the court. On balance, Chapter 13 policy requires that all payments be made within the plan. Therefore, confirmation of the Plan filed by John and Myrtha Foster is DENIED.

---

6. The 10% figure is a ceiling; after auditing—depending on the trustee's caseload—that percentage may be much less. Also, *Hines, supra*, recommended that debtor's counsel negotiate with the trustee for a lower fee in certain situations.

7. The higher the overall payment on unsecured claims, the better the proportion usually will be between payment on secured claims and payment on unsecured. Therefore, the trustee's surcharge will have less impact. It is the situation where the secured claims are being paid of necessity at 100%, while the unsecured claims are being paid only a minimal amount, where the surcharge will drastically reduce the percentage on unsecured claims. The court believes that in this latter situation—e. g., a plan that proposed 10% or less payment on unsecured claims originally, with the percentage dropping to 5% or less after the secured claims are included—the plan probably did not merit confirmation in the first place.