**In re Lafayette Lafe CASE, Flora C. Case, Debtors.**

**Bankruptcy No. 80–00294.**

United States Bankruptcy Court, D. Utah.

June 10, 1981.

Judith Boulden, Salt Lake City, Utah, as trustee.

Richard Bojanowski, Salt Lake City, Utah, for debtors, Lafayette Lafe and Flora C. Case.

## MEMORANDUM OPINION AND ORDER

RALPH R. MABEY, Bankruptcy Judge.

The issue in this case is whether a secured claim, the value of which has been affected by a determination of the Court pursuant to § 1325(a)(5)(B), may be paid directly by the debtors to the creditor without being subject to the trustee's supervision and statutory fee.

The facts of the case are as follows. The plan as last proposed states that the debtors "shall pay into the plan each month the sum of $1,504.00 of which $863.58 shall be paid directly to Mack Financial Co." Mack Financial Company is classified as holding a secured claim in the amount of $26,000,

which the debtor is to pay directly to the creditor. The plan then proposes to pay the unsecured portion of the claim of Mack Financial Company, amounting to around $5,152.73, through the trustee in accordance with treatment given all other unsecured creditors in the plan. The secured amount of this claim had been determined earlier by the Court in a lawsuit. Mack Financial Company filed a proof of claim and accepted the plan as proposed.

Transport Maintenance and Leasing, Inc., otherwise known as F & B Trucking, filed a secured claim in the amount of $8,484.31, and an unsecured claim in the amount of $2,312.60. The Court held a hearing on the value of the security involved and set it, pursuant to Section 1325(a)(5)(B), at $4,200. Thereafter, the creditor filed an amended proof of claim and rejected the plan. A 12% discount rate was added to the value set by the Court to comply with the provisions of Section 1325(a)(5)(B). The amount of the secured portion of the claim, including the discount rate applied, is also proposed to be paid by the debtors directly to the creditor at the rate of $136.37 per month. The unsecured portion of the claim is presumably to be handled under the plan by payment along with other unsecured claims.

The debtors contend that they have the right, as proposed in their plan, to pay creditors directly under the plan, or as they would term it, "outside" of the plan, and thereby avoid the trustee's statutory percentage fee which is assessed on payments made through the plan. At the last hearing on confirmation, the trustee objected to this proposed method of payment and to the treatment of Mack Financial Company and F & B Trucking as contemplated under the plan. In specific, she argued that where a secured creditor's rights have been altered by paring down its secured claim, retaining the collateral, and paying the claim in installments, pursuant to Section 1325(a)(5)(B), payments must be made through the trustee under the plan and must be subject to the trustee's statutory fee. The issues were briefed and submitted to the Court and are now ripe for decision.

A review of the applicable provisions in Chapter 13 provides the Court with the groundwork for analysis of this question. Section 1302(e) states:

> [The trustee] shall collect such percentage fees from all payments under plans in the cases under this chapter for which such individual serves as standing trustee.

Section 1322(a)(1) then specifies that the plan shall

> provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan.

Section 1325(b) gives the Court power to order an entity from whom the debtor receives income "to pay all or any part of such income to the trustee." Finally, Section 1326(b) states:

> Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.

■ In the case now before the Court, it is clear that the secured claims in question are provided for in the plan. Although payment is to be made "outside" of the plan, the fact that the claims were limited by a determination by the Court of the value of the security held under § 1325(a)(5)(B), means they must have been included in the plan. Section 1325(a)(5) is applicable only to "allowed secured claim(s) *provided for by the plan*." (Emphasis added.) Therefore, for the Court to exercise power over the secured claim in confirming a plan either with the creditor's acceptance or pursuant to the "cram down" provisions, the secured claim must be provided for in the plan. The Court has no power to affect a secured creditor's claim by determining the value of its security unless the claim is included in the plan and is to be paid under the plan.

■ Section 1302(e)(2), as previously set out, imposes the percentage fee of the trustee on "all payments under the plan." It does not specify that the payments must be

made by the trustee to be subject to the statutory fee, but only that they be made under the plan. Therefore, when a secured claim is provided for in the plan, whether it is paid directly by the debtor, or through the trustee, the payments are being made pursuant to the plan and thus under the plan. Those payments are then subject to the trustee's statutory fee.[1] Just because the debtor is making the payments directly will not make the payments ones which are made "outside" the plan. Rather, where it is clear, as in the present case, that the secured claims are being provided for under the plan, payment of those claims pursuant to the plan by any method, will subject those payments to the percentage fee of the trustee.

■ The question then arises as to whether the debtor has a right, nevertheless, to disburse payments directly to the creditor as part of the plan. It seems clear that under Section 1326(b), disbursements by the Chapter 13 debtor were anticipated. While normally the trustee will be the disbursing agent pursuant to Section 1326(b), the plan may propose otherwise or the Court may order otherwise if another arrangement would be preferable to the ordinary method of trustee disbursements. This allowance is in keeping with Sections 1322(a)(1) and 1325(b), for these sections only require payments to be made to the trustee "as is necessary for the execution of the plan." If the plan is to be consummated by payments through an entity other than the trustee and is confirmed with such provisions, it would not be necessary that all payments be submitted to the trustee to carry out execution. An alternative arrangement would be particularly appropriate in the case of a business Chapter 13 debtor where established practices are already in existence for disbursements to creditors. It would seem proper and equitable that in all cases where the debtor proposes an alternative form of disbursement, however, that the trustee or the creditor or creditors affected should be allowed the opportunity to object. Upon objection to the form of distribution proposed, the Court would be inclined to require disbursements through the trustee in the absence of some compelling reason to the contrary.

The rationale behind this preference for disbursement under the plan through the trustee is readily apparent. It is primarily the trustee's duty to insure that payments are made under the plan and to supervise execution of the plan. Therefore, a creditor should have the right to insure protection of its interests under the plan by refusing to deal further directly with the debtor with whom it may have experienced problems in the past. Rather, the creditor should be entitled to have the trustee more effectively exercise her supervisory duty by taking the responsibility of collecting and disbursing the payments to the creditor, leaving to the trustee the hassle of insuring the payments are being made and of bringing to the attention of the Court when the payments are in arrears and the plan is not being carried out as confirmed. Similarly, if the trustee feels that she can more effectively fulfill her supervisory duty over the execution of the plan by having all payments made through her, in the absence of some convincing reason either business or otherwise to the contrary, she ought to be entitled to require payments to be made directly to her. In light of the Court's interpretation of Section 1302(e)(2), that all payments made under and pursuant to the plan are subject to the trustee's statutory fee regardless of whether disbursement is made by the trustee or another party, it should, as a practical matter, make little difference to the debtor, in the absence of established procedures of disbursement, whether disbursement is made by the trustee or by the debtor himself. In the case

---

1. *See In re Centineo,* 4 B.R. 654, 6 B.C.D. 445 (Bkrtcy.D.Neb.1980). *See also* 5 Collier on Bankruptcy ¶ 1302.01[5][A] at 1302–19 (15th ed. 1980) where it compares the language of Section 1302 with Section 659(3) of the Bankruptcy Act which required the percentage fee to be assessed against "payments actually made by or for a debtor under the plan." Thus, the same result would have been reached under the Act. The trustee's fees as assessed, however, were excluded from computation of the percentage fee.

before the Court, where there appears no reason for allowing the debtor to make payments directly to the secured creditors involved, and where the trustee has objected to the means of payment as proposed, the Court is inclined to require payments to be made by the debtor to the trustee with the trustee disbursing the payments to creditors rather than having to supervise disbursements by the debtor.

In this connection, it must be stated that whether payments are made directly by the debtor or through the trustee on secured claims which have been provided for in the plan, a failure to make such payments would constitute a default under the plan. Thus, even if the trustee is not handling the payments to secured creditors, she would be responsible to bring to the attention of the Court nonpayment of those claims as a reason for dismissal or conversion of the case and revocation of confirmation. Once the debtor has modified secured claims under the plan and bound them by the provisions of the plan, a default in payments to these secured creditors whether the payments are being made directly by the debtor or through the trustee, would require a modification of the plan or the entire plan might be subject to dismissal. In light of this, it would obviously be easier for both the creditor and the trustee involved to have the trustee directly monitor the payments, thus obviating the necessity of notifying the trustee of defaults on payments not being made through her.

Taking into consideration, then, the trustee's supervisory role over execution and consummation of the plan regardless of how payments are made under the plan, and the other statutory duties given the trustee under Section 1302(b) and (c), it is fair and reasonable for the Court to conclude the Section 1302(e)(2) requires all payments under the plan to be subject to the trustee's percentage fee regardless of who acts as the disbursing agent. In a business Chapter 13, where it is most likely that the

Court will allow disbursements to be made according to the debtor's established practices, Section 1302(c) imposes additional duties on the trustee which counterbalance what might otherwise be the unfairness of imposing a percentage fee on funds not being handled directly by the trustee. Furthermore, in light of this holding by the Court, the Court would be amenable to altering the statutory percentage fee added to a particular plan for cases in which the compensation gained from such a fee is disproportionate to the work being done by the trustee in that case. This was the solution promulgated in *In re Eaton*, 1 B.R. 433 (Bkrtcy.M.D.N.C.1979), where the court considered the amount being paid into the plan, the time required of the trustee for fulfillment of his duties, and the complexity of the case in concluding that the percentage fee normally assessed was excessive and should be limited in that particular case. *See also* 5 Collier on Bankruptcy ¶ 1326.01[3], at 1326–5 (15th ed. 1980).

Finally, for purposes of clarification, it is the opinion of this Court that, although not accomplished here, secured creditors may be handled wholly outside of the plan. The provisions of Section 1322(b)(5) make it clear that the Code anticipated that at least payments on home mortgages could properly be made outside the plan. Similarly, since every secured claim must ordinarily be classified separately as each involves a different claim to property of the debtor, there appears to be nothing improper in allowing such a claim to be excluded from treatment under the plan and to be handled individually by the debtor. In fact, the wording of Section 1325(a)(5) which deals only with secured claims "provided for by the plan" would seem to anticipate that some secured claims would, in fact, not be handled pursuant to a plan.[2] In the case of secured claims handled wholly outside of the plan, no statutory fee of the trustee would be imposed on payments made as they are not made pur-

---

2. *See In re Wittenmeier*, 4 B.R. 86 (Bkrtcy.M.D. Tenn.1980) (This case involved a mortgage payment on a home proposed to be made outside

of the plan when no apparent modification of the claim had been made in the bankruptcy proceeding.)

suant to the plan.[3] Likewise, however, the debtor would not be entitled to invoke the "cram down" provisions of Section 1325(a)(5), but would be left either to pay the debt according to the original contract or to bargain with the creditor for such terms as the creditor is willing to accept. Non-payment on these agreements made outside of the plan would not constitute a default under the plan, nor would the creditor involved be affected by the provisions of the plan. The trustee would have no duty to supervise the execution of this independent relationship, and the creditor concerned would be left on its own to work directly with the debtor. The trustee's only concern with secured claims proposed to be paid outside of the plan would be as they affect the feasibility of the plan itself.[4] The debtor should realize that in his proposals to handle secured claims completely outside of the plan, however, consummation of his plan would not result in a discharge of those debts. Section 1328(a) discharges the debtor, upon completion of payments under the plan, only from "all debts provided for by the plan" or which have been disallowed. For purposes of determining feasibility,

however, and as a matter of convenience in clarifying for the Court, the trustee, and the creditor involved what treatment is proposed of a particular claim, the Court will require that the plan specify all secured claims which are to be handled outside of the plan.[5]

■ In conclusion, the Court notes that its view concerning secured claims does not necessarily imply the same treatment for an unsecured claim. A proposal to pay any claim outside of and independent of a plan constitutes a separate classification.[6] Thus, while the separate treatment of a secured claim outside of a Chapter 13 plan will not normally violate the allowable classification scheme set for Chapter 13 since secured claims are usually and properly classified individually, the payment of an unsecured claim independent of the plan may very well constitute an improper classification under Sections 1322(a)(3) and 1322(b)(1).[7]

Pursuant to this memorandum decision,

IT IS NOW ORDERED that the debtors, in the absence of presentation of reasons to support a contrary ruling, amend their plan

3. *Contra In re Hines*, 7 B.R. 415, 6 B.C.D. 1356 (Bkrtcy.D.S.D.1980).

4. At least one court has held that where the debtor proposes to pay secured creditors outside of the plan, the court may retain jurisdiction over all future earnings of the debtor with the trustee remitting to the debtor the excess over the amount required to execute the plan to insure consummation of the plan. *See In re Berry*, 5 B.R. 515, 6 B.C.D. 649 (Bkrtcy.S.D. Ohio 1980).

5. Although the court in *In re Foster*, 9 B.R. 482, 7 B.C.D. 521 (Bkrtcy.S.D.Tex.1981) has disagreed with the conclusion expressed here in requiring all secured, as well as unsecured claims to be paid through the plan, this Court is of the opinion that the concerns expressed in *Foster* can be adequately dealt with without unduly restricting the Chapter 13 debtor's options. As long as the Court has fully considered the feasibility of the plan in conjunction with any payments proposed to be made outside of the plan, this treatment would not appear to jeopardize the plan or supervision and execution of the plan any more than would payment of the debtor's current monthly expenses. These creditors would be handled extraneous to the plan and accordingly, would accept the advantages and disadvantages of

continuing to deal directly with the debtor rather than being bound to the provisions of a confirmed plan which brings with it the albeit protective, but "interfering", jurisdiction and supervision of the Court. These creditors could pursue remedies independent of those established under a confirmed plan and could do so without affecting the plan being executed. The trustee has no duty to supervise the payment of claims made independently of the plan, and as long as payments under the plan are continued, will not be concerned with any relationship established outside of the plan, or the duration of such a relationship.

6. *See In re Weedan*, 7 B.R. 106, 6 B.C.D. 1309 (Bkrtcy.D.R.I.1980); *In re Haag*, 3 B.R. 649, 6 B.C.D. 367 (Bkrtcy.D.Or.1980); *In re Tatum*, 1 B.R. 445 (Bkrtcy.S.D.Ohio 1979); and *In re Blevins*, 1 B.R. 442 (Bkrtcy.S.D.Ohio 1979).

7. *See In re Iacovoni*, 2 B.R. 256 (Bkrtcy.D.Utah 1980), for an explanation of acceptable classifications of unsecured claims under Section 1322(b)(1). *See also In re Haag, supra* (Debt owed for past alimony and support which would be nondischargeable under Section 1328(a)(2) can be properly classified separately from other unsecured claims.)

to provide for payments to Mack Financial Company and F & B Trucking to be made through the trustee, and to further provide for the statutory percentage fee of the trustee to be assessed on payments which have been, and are to be, made to those creditors. The hearing on confirmation having already been held and all issues with the exception of those addressed in this opinion having been resolved, the Court will confirm the plan as amended upon submission to the Court.