In re Cletus Demo HAGENSICK, Irma Mae Hagensick, Debtors.

Bankruptcy No. 86–02656C.

United States Bankruptcy Court, N.D. Iowa.

Feb. 5, 1987.

Dumbaugh & Childers, P.C., Cedar Rapids, for debtors.

Carol Dunbar, trustee, Waterloo.

John M. Titler, Cedar Rapids and Dale L. Putnam, Decorah, for Federal Land Bank.

Matthew J. Erickson, Postville, for Luana Sav. Bank.

Richard G. Pattison, Monona Iowa, for Union State Bank, Monona Cooperative Co.

*Memorandum of Law and Order re: Computation of Chapter 12 Trustee's Fee*

MICHAEL J. MELLOY, Bankruptcy Judge.

The matter before the Court is the confirmation of Debtors' proposed Chapter 12 Plan. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L).

Having reviewed the Debtors' Chapter 12 plan and briefs on this issue, the Court enters the following ruling and Order.

## FINDINGS OF FACT

The Debtors are farmers who live in Monona, Iowa. Their operation consists of both crops and beef and dairy cattle, based on three parcels of real estate in Allamakee County. Their schedules reflect that they meet the jurisdictional standard for Chapter 12 relief, found at 11 U.S.C. § 101(17).

The Debtors filed their Chapter 12 petition, statement of financial affairs and schedules, and plan on November 26, 1986. Federal Land Bank, one of four secured creditors, holds a first mortgage on each of the three parcels of farm real estate. Luana Savings Bank of Luana, Iowa, holds a second mortgage on two parcels of farm real estate, and a blanket security agreement on machinery, livestock, and crops. Union State Bank of Monona, Iowa holds a security agreement covering a BMB mower. Monona Cooperative Company, a supplier of feed and fertilizer, is secured by a right of setoff in deferred patronage dividends of the Debtors declared prior to the bankruptcy filing. All other creditors are unsecured.

Payments to secured and priority creditors were proposed as follows:

| Claim | Summarized Terms |
|---|---|
| Priority tax claimants (IRS, Clayton and Allamakee County Treasurers) | Paid in five equal annual installments, first payment on first anniversary of confirmation date. |
| Federal Land Bank | Amortized over 30 years at 10% interest per annum, paid in 30 annual installments, first payment on first anniversary of confirmation date. |
| Luana Savings Bank | Amortized over five years with interest at 10% per annum, paid in five annual installments, first payment on first anniversary of confirmation date. |
| Union State Bank | Amortized over five years with interest at 10% per annum, paid in five annual installments, first payment on first anniversary of confirmation date. |

Monona Cooperative Company

Deferred patronage dividends will be retained by the creditor, become payable seven years after they have been declared, and will be set off against the debt owing.

---

By operation of their Chapter 12 plan, the Debtors are modifying the priority tax claims and the claim of Luana Savings Bank by spreading payments over five years.

The Debtors are modifying the claim of Federal Land Bank by proposing to "write down" the claim, that is, to treat Land Bank as secured only to the value of the real estate, or $190,300. The remaining $177,656 of the Land Bank claim is to be treated as unsecured.

The Debtors are modifying the claim of Union State Bank by writing down the claim to the value of the security, $250, and treating the remaining $5,179 as unsecured.

Debtors' plan proposes that the Debtors will make all payments on the priority tax claims and secured claims directly and not through the Chapter 12 trustee.

Debtors propose to pay to the trustee $14,758.35 each year, to be distributed by the trustee to holders of allowed unsecured claims commencing on the first anniversary of the plan confirmation and continuing for four years thereafter. It is on these annual payments to unsecured creditors through the trustee, and these payments only, which the Debtors propose to compute and pay to the trustee the percentage fee as provided in § 1202(d)(1)(B).

Federal Land Bank had objected to its treatment under Debtors' proposed plan. At the confirmation hearing, Debtors and Federal Land Bank advised the Court that an agreement had been reached to amend the plan treatment setting the Federal Land Bank claim at $200,300.00 and raising the interest rate to be paid on the Land Bank secured claim from 10 percent to 11 percent. The plan amendment reflecting that change was to be submitted.

The only objection to confirmation lodged at the confirmation hearing was put forth by the Standing Chapter 12 Trustee. She advised the Court that she felt the plan was feasible, was proposed in good faith, and was in compliance with Chapter 12, except as to the payment of the Trustee fees under § 1202(d)(1)(B). She indicated that she would have to object to confirmation, unless the Debtors agreed to amend their plan to provide for a trustee's fee computed on all payments, including payments to secured creditors.

At the conclusion of the confirmation hearing, this Court entered an Order taking under advisement the issue of the Trustee's compensation and expenses. The Court also indicated on the record that if the plan were amended to reflect the change in treatment of the Federal Land Bank claim and the plan were amended to conform to this Court's ruling as to Trustee's fees and expenses, the plan would meet all of the requirements of Chapter 12 and an Order of Confirmation could then enter.

## DISCUSSION AND CONCLUSIONS OF LAW

Section 1202(d)(1)(B) provides that the court shall set for the standing trustee a percentage fee not to exceed the sum of—

(i) not to exceed ten percent of the payments made under the plan of such debtor, with respect to payments in an aggregate amount not to exceed $450,-000; and

(ii) three percent of payments made under the plan of such debtor, with respect to payments made after the aggregate amount of payments made under the plan exceeds $450,000;

based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.

In computing the Chapter 12 trustee's percentage fee, two issues are presented. First, the Court must determine which payments are subject to the trustee's percentage fee, which involves defining "under the plan" and conversely, the appropriateness of making payments outside the plan. Second, the Court must establish the percentage rate to be applied to payments subject to the fee.

Section 1202(d)(1)(B) and the whole of Chapter 12 are closely modeled after Chapter 13 of the Code. Joint Explanatory Statement of the Committee of Conference, *reprinted in* 134 Cong.Rec. H8999 (daily ed. Oct. 2, 1986). Section 1302(e) applies a structurally similar method of computing a percentage fee "from all payments under plans." Chapter 13 cases which interpret the phrase "payments under plans", discuss the appropriateness of making payments outside the plan, and establish percentage rates at which fees are computed, are analogous to the case at bar, and provide guidance.

## I. *Payments Subject to the Percentage Fee*

■ By proposing to make all payments directly to secured creditors, Debtors seek to exempt these payments from inclusion in computation of the trustee's fee. The Court, while concluding that the Debtors may act as disbursing agent for these payments, also concludes that such payments are "under the plan" and must be included in computation of the trustee's fee.

The concept of payments outside the plan, much litigated in Chapter 13 cases, is often confused for the situation in which the debtor acts as disbursing agent for payments made under the plan. At the Court's discretion, a debtor may assume the trustee's role and act as disbursing agent for plan payments. 11 U.S.C. § 1326(c); *In re Tartaglia*, 61 B.R. 439, 441 (Bkrtcy D.R.I.1986) This replacement of the trustee is subject to a demonstration of the debtor's ability to make direct payments, 11 U.S.C. § 1325(a)(6), and to the Court's power to later vacate this provision if it proves unworkable. *Id.* at 441–42.

However such an arrangement does not necessarily mean such payments are outside the plan and not subject to the trustee's fee. *In re Case*, 11 B.R. 843, 847 (Bkrtcy D. Utah 1981) (all payments under the plan subject to trustee's fee regardless of who acts as disbursing agent). Thus the operative language, undefined in the Code, is "under the plan". An extensive survey of reported Chapter 13 cases reveals one core legal theory around which a variety of approaches gravitate: where the debtor seeks the restorative, fresh start protection of the bankruptcy code as against a creditor, his payment to the creditor is "under the plan" and subject to the trustee's fee. Thus, in each of the following circumstances, courts have concluded that payments are "under the plan":

a) current payments on a mortgage claim when the plan provides for curing the arrearage on that claim; *Matter of Foster*, 670 F.2d 478, 489 (5th Cir.1982); *In re Tartaglia*, 61 B.R. 439, 441 (Bkrtcy D.R.I.1986); *Citicorp Person-to-Person Financial Center v. Jordan*, 32 B.R. 867, 870 (Bkrtcy S.D. Ohio 1983); *In re Glasper*, 28 B.R. 6, 8 (9th Cir.Bankr.App. 1983);

b) payments on claims limited by a determination by the court of the value of the security under § 1325(a)(5)(B); *In re Case, supra.*

Conversely, payments ·have been considered outside the plan in the following circumstances:

c) where debtor does not attempt to modify the rights of the creditor by curing arrearages or in any other respect; *In re Evans*, 66 B.R. 506, 509–10 (Bkrtcy E.D.Pa.1986);

d) where debtor arranges for automatic deduction from wages to continue payments on a fully secured automobile loan; *Matter of Bradley*, 705 F.2d 1409, 1411 (5th Cir.1983);

e) where debtors, never delinquent and not curing a default, will make mortgage payments directly to the creditor; *In re Wittenmeier*, 4 B.R. 86, 88 (Bkrtcy M.D. Tn.1980).

Adding support for a presumptively all-inclusive construction of payments "under the plan" is a comparison of the duties of Chapter 12 and Chapter 13 trustees. Sections 1202(b) and 1302(b) are nearly identical, but Chapter 12 trustees have the potentially important additional authority to appear and be heard on sales of property of the estate, § 1202(b)(3)(D), and the duty to step in and perform the duties of a Chapter 11 trustee if the debtor is removed as debtor in possession, § 1202(b)(5).

In light of the above analysis, the Court turns back to an examination of the Debtors' plan in the case at bar. The Court has found that the plan, by reamortizing the debts owed to priority tax claimants, Federal Land Bank, Luana Savings Bank, and Union State Bank, modifies the rights of these creditors. The Court concludes that payments to these creditors must, for purposes of § 1202(d)(1)(B), be considered to be "under the plan" and subject to inclusion in calculation of the trustee's percentage fee. As to the Monona Cooperative Company, it appears that no creditor rights are being modified, and thus the value of any setoff exercised will not be considered under the plan for purposes of § 1202(d)(1)(B).

## II. *Percentage Rate*

■ Section 1202(d)(1)(B) provides that the Court shall set the trustee's percentage fee at "not to exceed ten percent of the payments" up to $450,000, and "three percent of payments" over $450,000, "based on such maximum annual compensation and the actual, necessary expenses incurred."[1]

In the analogous Chapter 13 context, the court has much discretion with respect to computation of the fee; ten percent is a maximum, and a smaller percentage may be assessed where the court deems it appropriate. *Foster*, 670 F.2d at 491. Several other courts have so held. *Tartaglia*, 61

B.R. at 442–43; *Case*, 11 B.R. at 847; *Hines*, 7 B.R. at 421.

In Chapter 12, the Court deems it appropriate to set the rate of the trustee percentage fee at five percent up to $450,000. Given a generally all-inclusive definition of payments "under the plan", establishing a median percentage rate should provide sufficient funds to properly compensate the Chapter 12 standing trustee as well as ameliorate Debtors' concern that Chapter 12 would become too expensive to provide the broad relief to family farmers that Congress intended. This also leaves flexibility for the parties to negotiate a different rate, *Hines, supra* at 421, and for the Court to alter the rate where the trustee's efforts and fee are disproportionate, *Case*, 11 B.R. at 847. The Court predicts that it will be the rare case in which inordinate efforts by the trustee justify compensation at the maximum statutory rate. Further, the Court reaches its conclusion on trustee percentage rate without prejudice to any party to seek post-confirmation adjustment in light of changed circumstances.

To summarize, the Court is in agreement with the general proposition that a Chapter 12 debtor may treat creditors outside of the Chapter 12 plan only if the debtor in no way alters, modifies or adjusts the rights or claims of the creditor, and in no way seeks to invoke the jurisdiction of this Court over the rights or claims of the creditor. Any creditors being treated outside a Chapter 12 plan must be so identified in the plan to assist the Court in making its feasibility analysis. Any payments for which debtors are to assume the trustee's role as disbursing agent should be so designated to assist the Court in making its feasibility analysis.

## ORDERS

Debtors shall within 15 days amend their plan to reflect that payments to all priority tax claimants, Federal Land Bank, Luana Savings Bank, and Union State Bank are to

---

1. The Court notes that this Court's authority to set the fee will eventually be assumed by the Attorney General in consultation with the United States Trustee. Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy

Act of 1986, Pub.L.No. 99–554, § 227. The issue of the Court's right to review the percentage fee as set by the Attorney General is a matter of increasing litigation. *See, In re Tartaglia*, 61 B.R. at 443.

be made under the plan but showing Debtors as disbursing agents, at the § 1202(d)(1)(B) trustee percentage rate of five percent for total payments up to $450,000.00, and at three percent for total plan payments exceeding $450,000.00.