In re Charles Edward **LENZ** and Mary Jane Lenz, Debtors.

Charles Edward **LENZ** and Mary Jane Lenz, Petitioners-Debtors,

v.

The **FEDERAL LAND BANK OF ST. LOUIS**, Respondent-Creditor.

Bankruptcy No. 87–80005.

United States Bankruptcy Court, C.D. Illinois.

June 2, 1987.

Barry M. Barash, Barash, Stoerzbach & Henson, Galesburg, Ill., for debtors.

Douglas R. Lindstrom, West, Neagle & Williamson, Galesburg, Ill., for The Federal Land Bank of St. Louis.

## OPINION AND ORDER

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

The debtors are farmers who filed a Chapter 12 proceeding. The matter came before the Court on the hearing to confirm their plan. The Federal Land Bank of St. Louis (LAND BANK), a secured creditor holding a first mortgage on their farm, filed objections to the plan. The facts are not in dispute. The debtors' farm consists of 222.2 acres and was valued by their appraiser at $117,766.00. The principal balance due the LAND BANK is $73,998.00,

which leaves the debtors an equity in the farm of $43,768.00. The debtors' promissory note to the LAND BANK contains a variable interest rate clause. The original interest rate was 8.5% and the current interest rate is 12½%.

The debtors' plan classifies the LAND BANK claim as follows:

"Amt. of allowed claim: $73,998
Annual payment: $8,048
Interest rate: 11%
Interest accrues from: 1/5/87 [1]
Amortization: 30 years
Date of next payment: December 1, 1987
Manner of payment: Direct by debtors"

The debtors' plan also provides the LAND BANK is to waive default interest, penalties and attorney's fees. The debtors' plan goes on to provide the following manner of payment:

"1. 'Manner of payment—by trustee' means payments by the debtors or others to the Chapter 12 trustee who, in turn, shall disburse them pursuant to the plan. Payments by the trustee are subject to trustee's fees. Payments made by the trustee are sometimes referred to as 'payments inside the plan'.

m. 'Manner of payment—direct by debtors' means payments made directly by the debtors to creditors pursuant to the plan which payments bypass the trustee. Payments direct by debtors are not subject to trustee's fees. Direct payments by the debtors which bypass the trustee are sometimes referred to as 'payments outside the plan'."

The LAND BANK's first objection is based upon the manner of payment to it. The LAND BANK does not challenge the feasibility of the debtors, rather than a trustee, making the payments. It accepts that part of the plan, but argues because of that feature of the plan, the proposed payments to it will be outside of the plan and therefore the loan terms cannot be modified to provide for 11% interest with a 30-year amortization. The debtors take the position the proposed payments to the

1. This is the date of the filing of the Chapter 12 proceeding.

LAND BANK are payments pursuant to the plan, but rather than being made through the trustee, they are to be made direct by the debtors, who like many farmers in reorganization, have a "thin" plan and want to avoid paying excessive trustee's fees, thereby making more funds available to the debtors and their creditors.

The Bankruptcy Code does not mandate payments to secured creditors must be included in a plan. A debtor in a Chapter 12 proceeding has the option of providing for secured creditors either inside or outside the plan. This conclusion is reached by a plain reading of Sections 1202(d)(2), 1222(b)(9), 1225(a)(5) and (6), and 1228 of Chapter 12. 11 U.S.C. Sections 1202(d)(2), 1222(b)(9), 1225(a)(5) & (6) and 1228. However, while the terms of secured loans being repaid inside a plan can be modified pursuant to Section 1222(b)(2), 11 U.S.C. Section 1222(b)(2), the terms of secured loans being repaid outside a plan cannot be modified. *Matter of Foster*, 670 F.2d 478 (5th Cir.1982). *In re Case*, 11 B.R. 843 (Bkrtcy.D.Utah 1981). 5 *Collier on Bankruptcy*, para. 1322.06(1).[2]

To modify the rights of a secured creditor, a debtor must comply with Section 1225(a)(5), 11 U.S.C. Section 1225(a)(5). 5 *Collier on Bankruptcy*, para. 1322.06(1). The goal of Section 1225 is to place the secured creditor in the same position economically as if the collateral had been surrendered to the secured creditor. 5 *Collier on Bankruptcy*, para. 1325.06(4)(b)(iii)(B). If the debtor, inside a plan, modifies a secured creditor's rights, then the plan must propose a payment to the secured creditor which is equal to what the secured creditor would have received had the collateral been surrendered to the secured credi-

tor, and he had not been subject to the plan.

■ The first issue for this Court's determination is whether the proposed payments to the LAND BANK will be inside or outside of the plan. Section 1226(c), 11 U.S.C. Section 1226(c), states that except as otherwise provided in the plan or the order confirming the plan, the trustee shall make payments to creditors under the plan. It has been suggested that where the debtors are business debtors who have the capability of disbursing payments to creditors, an exception which authorizes a direct payment method by the debtors and which bypasses a trustee, is acceptable. 5 *Collier on Bankruptcy*, para. 1326(4). This payment method was approved in both *In re Foster* and *In re Case, supra*. Support for this method of payment can also be found in Section 1225(a)(5)(B)(ii), 11 U.S.C. Section 1225(a)(5)(B)(ii), which indicates the distribution (in this case the payments) to the secured creditor can be by either "the trustee or the debtor".[3] In the case before this Court, the debtors are in the business of farming and there is no objection as to the feasibility of their making the payments directly to the LAND BANK. Notwithstanding the use of language in paragraph 2.01(m) which refers to payments to the LAND BANK as being "payments outside the plan", it seems clear to this Court the payments are pursuant to the plan and the debtors are implementing the exception authorized by Section 1226(c) by proposing a plan which provides for direct payments to the LAND BANK. The fact the payments are being made by the debtors in order to minimize the payment of the trustee's fees is no reason to conclude the payments are outside the plan, as it is contemplated that in this type of situation the

**2.** There are no reported decisions which would give this Court guidance on how the issues raised in this Chapter 12 proceeding should be resolved. However, many of the sections in Chapter 12 are similar, but not necessarily identical, to sections found in Chapter 13. Both the debtors and the LAND BANK have correctly based their arguments upon analogous sections in Chapter 13 and reported decisions involving those sections. Section 1202(d)(2)'s equivalent can be found in Section 1302(e)(2). Section 1222(b)(9)'s equivalent is Section 1322(b)(2).

The equivalent of Section 1225(a)(5) and (6) is Section 1325(a)(5) and (6), and the equivalent of Section 1228 is Section 1328.

**3.** This alternate approach to payment is even stronger in a Chapter 12 proceeding than in a Chapter 13 proceeding, as Section 1225 contains a specific reference to the debtor, while Section 1325 contains no reference to either the trustee or the debtor.

court can make an appropriate adjustment to the compensation to be allowed the trustee. See 5 *Collier on Bankruptcy,* para. 1326.01(4). Therefore, this Court holds the payments are being made inside or pursuant to the plan, and the rights of the LAND BANK can be modified.

■ The LAND BANK's second objection is as an oversecured creditor, it is entitled to the contract rate of interest which under the variable rate clause of the loan documentation is 12½%, but the plan only proposes payment of 11%. The debtors take the position the plan should be confirmed with the lesser rate of interest. The next issue for this Court's determination is whether in a Chapter 12 proceeding a plan can be confirmed which pays to an admittedly oversecured creditor an interest rate less than the contract rate.

The reported decisions which have considered the issue of an appropriate interest rate to be paid an oversecured creditor lack unanimity of results. This Court considers the appropriate resolution of this issue to involve Sections 506 and 1225 of the Bankruptcy Code, 11 U.S.C. Sections 506 and 1225, and requires a two step determination. *In re Hugee,* 54 B.R. 676 (Bkrtcy.D. C.Car.1985). As previously noted, the goal of the Bankruptcy Code is to place the LAND BANK in the same economic position as if the collateral were surrendered to it. 5 *Collier on Bankruptcy,* para. 1325.-06(4)(b)(iii)(B). To reach this result, the court must first determine the amount of the LAND BANK's allowed secured claim. This determination is made pursuant to Section 506 of the Bankruptcy Code. Once that determination is made, then this Court must determine whether pursuant to Section 1225 the present value of the property being distributed under the plan (in this case the amount of the payments) at least equals the amount of the allowed secured claim. Both of these determinations require the selection of an appropriate interest rate.

Section 506(b) provides as follows:

"(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."

Most courts which have applied Section 506(b) have held that post petition interest should be computed at the contract rate to the effective date of the plan. Some courts have rejected the use of the contract rate and have permitted use of other rates. However, these latter decisions have been criticized. 3 *Collier on Bankruptcy,* para. 506.05. This Court agrees with the majority of those courts which have held that the contract rate is the appropriate rate. Therefore, this Court holds that pursuant to Section 506(b) the LAND BANK, being an oversecured creditor, is entitled to interest on the principal amount of the indebtedness at the contract rate up to the effective date of the plan.

The second determination, which also requires the fixing of an interest rate, is the one that has to be made under Section 1225(a)(5)(B)(ii) which permits confirmation of the plan if the LAND BANK receives value, as of the effective date of the plan, of property to be distributed under the plan on account of its allowed secured claim, of not less than the allowed amount of such claim. In other words, this Court must determine the present value of the payments to be distributed to the LAND BANK. This requires the capitalization of the deferred payments by converting the deferred payments to an equivalent capital sum as of the effective date of the plan. The equating of the present value of deferred future payments with the amount of the allowed secured claim is accomplished through the application of an interest rate. Although there are decisions which hold the contract rate is the appropriate rate of interest, the better view is that the rate of interest should be the market rate of interest. 5 *Collier on Bankruptcy,* at para. 1325.06(4)(b)(iii)(B) states as follows:

"The purpose of the present value requirement is to place the holder of an

allowed secured claim in the same position economically as if the debtor exercised the option of surrendering the collateral. Through the payment of interest, the creditor is compensated for the delay in receiving the amount of the allowed secured claim, which would be received in full immediately upon confirmation if the collateral were liquidated. Since the creditor is deprived of these funds to the extent they are deferred through the plan, the creditor must obtain them elsewhere, for whatever purposes they were to be used. In view of this purpose, the appropriate discount rate is one which approximates the creditor's cost of funds in its business borrowings. If the holder of an allowed secured claim receives interest which compensates it in full for any additional interest costs incurred due to the deferral of payment, it is not harmed by that deferral.

Thus, contrary to the holdings of a number of courts, it is rarely appropriate to select the rate charged to the debtor in the original transaction as the present value discount rate. Treating the chapter 13 deferral of payments like a new loan transaction, as those courts have done, provides the holder of the allowed secured claim with not only the cost of the funds it would lend but also the costs of a new loan transaction, which would not be incurred, and the profit that would be earned in that transaction. Neither of these latter two amounts would be received if the collateral were surrendered; the lender would have to incur new transaction costs to earn an additional profit. To include them in the present value discount rate would give the holder of an allowed secured claim more than the equivalent of immediate payment of that claim in full. Such a reading of the statute would also ignore the fact that, during the legislative process leading to the Bankruptcy Amendments and Federal Judgeship Act of 1984, Congress specifically considered an amendment requiring the contract rate of interest to be paid and rejected it."

Therefore, this Court holds that for the purposes of Section 1225, the appropriate interest rate is the market rate. Because there was no evidence presented as to market rate, the hearing on confirmation needs to be rescheduled in order that the debtors and the LAND BANK may present evidence on that matter.

The Debtors' brief raises two other points which require some comment. The first is these debtors, like most other farm debtors in reorganization, have a "thin" plan and as a matter of policy an oversecured creditor should not be permitted to charge interest in excess of the market rate, as doing so would destroy the farm debtor's ability to reorganize. Congress responded to the economic blight of the farmer by enacting Chapter 12 of the Bankruptcy Code. In so doing, Congress made Section 506 of the Bankruptcy Code applicable to a Chapter 12 proceeding and required compliance with Section 1225 as a condition of confirmation. This Court must apply the Bankruptcy Code as enacted by Congress and in so doing is required to apply a contract rate in making the Section 506 determination, even though that application might cause some difficulty in proposing and consummating a plan. Any further policy arguments should be directed to Congress.

The second point is that the appropriate rate of interest should be the legal rate of interest, which in Illinois the debtors contend is 9%, pursuant to Illinois Revised Statutes, 1985, Chapter 17, paragraph 6404. If the secured creditor recovered the collateral and liquidated it, the proceeds would be invested at a market rate, which would not necessarily be the legal rate. Historically, at one point in time the market rate was less than the legal rate. However, during more recent times the market rate has exceeded the legal rate, a condition which presently exists. It is also noted that for a long period of time Section 6404 has contained a business loan exception to the legal interest rate, which permits the lender and borrower to agree to a higher rate of interest. Therefore, this Court does not believe that the legal rate of interest is the appropriate interest rate, because just as using a contract rate for the pur-

pose of Section 1225 can result in the secured creditor receiving more than he is entitled to, use of the legal rate of interest could result in a secured creditor receiving less than he is entitled to or require the debtor to pay more than is justified.

IT IS, THEREFORE, ORDERED that the confirmation hearing be rescheduled for the purpose of taking evidence consistent with this Opinion and Order.