**In re Charles Larry MOUSER aka Larry Mouser dba Mouser Farms, Debtor.**

Bkrtcy No. 2–88–03145.

United States Bankruptcy Court, S.D. Ohio, E.D.

March 17, 1989.

Nicholas W. Jones, Delaware, Ohio, for debtor.

Frank M. Pees, Worthington, Ohio, trustee.

William B. Logan, Luper, Wolinetz, Sherriff & Neidenthal, Columbus, Ohio for Federal Land Bank.

Bradley K. Sinnott, Vorys, Sater, Seymour and Pease, Columbus, Ohio for Banc-Ohio Nat. Bank.

OPINION AND ORDER ON OBJECTIONS TO CONFIRMATION

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon objections to confirmation of the Chapter 12 plan proposed by Charles Larry Mouser. The objections were filed on behalf of Production Credit Association ("PCA") and Frank M. Pees, the Chapter 12 standing trustee, and were heard by the Court.

The Court has jurisdiction in these contested matters under 28 U.S.C. § 1334(b) and the General Order of Reference previously entered in this district. Pursuant to 28 U.S.C. § 157(b)(2)(L) this is a core proceeding involving the confirmation of a plan.

At the hearing the Court was informed that PCA's objection to confirmation had been resolved by certain amendments to the plan. Accordingly, the objection of PCA is considered withdrawn by consent of the parties.

■ The thrust of the trustee's objection relates to the method of payment chosen by the debtor for certain of his obligations. Specifically, the debtor's plan proposes that he will serve as the disbursing agent for payments to seven of his prepetition creditors. Further, his plan contemplates that monies paid directly to those creditors will not be subject to the trustee's statutory percentage fee.

The trustee argues that all payments to prepetition creditors are subject to the trustee's fee because such payments are "payments made under the plan" within the meaning of 28 U.S.C. § 586(e)(1)(B)(ii). The debtor contends, however, that the trustee's right to assess a fee is limited by 28 U.S.C. § 586(e)(2) to payments received by the trustee under the plan.

FACTUAL BACKGROUND

The proposed plan provides that the debtor will disburse payments to Commodity Credit Corporation/ASCS ("ASCS") and BancOhio National Bank ("BancOhio"),

both of which hold claims secured by liens against the debtor's 1985 and 1986 stored corn. That corn has now been converted by sale to cash proceeds. The debtor also proposes to disburse payments to Erma Dienst and Doris Eddins, the holders of claims for rent of land used by the debtor. Those claims are secured by an interest in crops grown on the rented land. The debtor further proposes to disburse payments to three land owners with whom he has sharecropping agreements whose claims are secured by interests in crops grown on each claimant's land.

In addition, the debtor proposes to pay Mouser Trucking, Inc. through remission of a portion of the corn crop proceeds. That claimant is an entity related to the debtor which extended operating loans for the 1988 growing season. Finally, the debtor proposes to disburse payments to two holders of allowed claims secured by mortgages against the debtor's real property. One mortgage holder, Emmett Newfer, is fully secured and is to be paid $7,800 each year pursuant to the existing note. PCA is the other mortgage holder and it is further secured by liens against the debtor's farm machinery and growing crops. Only general and priority unsecured claims are to be paid by the trustee.

### ISSUES OF LAW

■ The trustee's objection raises certain issues inherent in the "under the plan/outside the plan" dichotomy. Specifically, may pre-petition obligations be paid directly by a debtor? If such payments are permissible, are those payments outside the plan? Does the identity of the disbursing agent determine the propriety of assessing the trustee's fee on the payments?

### COMPARISON OF CHAPTER 12
### and CHAPTER 13

A body of law has developed under Chapter 13 of the Bankruptcy Code which has permitted payments by debtors without assessment of a standing trustee's statutory fee for certain obligations not modified by the plan and not subject to the discharge. *See, e.g., In re Case,* 11 B.R. 843 (Bankr.D.

Utah 1981). Although it has been held that additional debts occasionally may be paid directly by Chapter 13 debtors without imposition of a fee when such treatment is consistent with the provisions of Chapter 13 and permitted by the Court, if such payments are to reduce obligations modified by the plan or subject to the discharge, those payments nevertheless generally have been held to be "payments under the plan" which are, therefore, subject to the trustee's fee. *In re Foster,* 670 F.2d 478 (5th Cir.1982).

This Court has previously agreed generally with the approach adopted in *Case* and *Foster* except that where pre-petition arrearages exist in those obligations, this Court requires payments to be disbursed by the trustee for reasons related to feasibility. *See* Southern District of Ohio, Local Bankruptcy Rule C–3.18.17 and *In re Carson,* 85 B.R. 460 (Bankr.S.D.Ohio 1988). This Court has also usually required payments on short-term, pre-petition obligations to be made by the trustee whether or not such obligations are repaid in a manner which is different from that required by the underlying note or other evidence of indebtedness. Payments on all other pre-petition obligations, assumed executory contracts or administrative claims have been considered payments under the plan, subject to the standing trustee's fee, whether the trustee or the debtor makes the disbursements. And, in this Court it is an uncommon exception for a Chapter 13 debtor to make those disbursements.

The distinctions developed in Chapter 13 and court practices in that area are useful models because many provisions in Chapter 12 were patterned after corresponding provisions in Chapter 13. However, changes in the trustee system and certain unique characteristics of the Chapter 12 remedy make it necessary to further examine the policies and impacts of those holdings and procedures before determining the appropriateness of applying those principles to Chapter 12 cases.

Chapter 12 is a remedy which is available only to a specific category of debtors who qualify as family farmers under the provi-

sions of 11 U.S.C. § 101(17). Chapter 12 debtors in this area usually appear to the Court to have significant obligations secured by liens against properties which are worth less than the amounts of the obligations. This fact is caused by recent declines in the value of agricultural real property, farm equipment and commodity prices. The unsecured trade debt is often relatively insignificant. However, unsecured claims resulting from the insufficiency in value of mortgaged assets, when added to the trade debt, produce a significant unsecured creditor body. Debtors in the overwhelming majority of cases in this court are insolvent to such a degree that liquidation would produce, at most, only a small dividend for unsecured claims.

Chapter 12 differs in other ways from Chapter 13. A Chapter 12 debtor's income from farm operations is received only two or three times during a calendar year rather than weekly or bi-weekly. Those receipts are primarily in December or January in this part of the midwest. The statute gives Chapter 12 debtors the power to "write down" each secured claim, including claims secured by residential real property, to the current value of the asset securing such debt. The remainder of the obligation becomes an unsecured claim. Debtors also may repay those allowed secured claims over a period which extends far beyond the three to five year period of the plan. The reorganization is thus accomplished by reamortization of "written down" allowed secured claims over an extended period, paid annually or semi-annually in amounts reduced from their pre-bankruptcy levels. Unsecured claims generally receive payment of a relatively small dividend from the debtors' disposable income over the three to five year length of the plan. Property may also be sold through an increased power of sale.

A Chapter 12 debtor's total obligations are usually much greater than those of an average Chapter 13 debtor. The number of creditors, however, often is fewer. The percentage dividend paid to holders of unsecured claims is generally lower in Chapter 12. Because most family farmers are self-employed, the wage withholding method used in Chapter 13 to control the disposition of funds and help insure success of the plan is not available.

The trustee's role also varies depending upon whether a debtor is in Chapter 12 or Chapter 13. Although each trustee is accountable for all monies received from debtors or their employers and issues checks to creditors consistent with the terms of the confirmed plan, certain differences exist. Secured debts are much higher in Chapter 12 and the frequency with which creditors are paid is less. Consequently, the administrative burden of the trustee related to payments is reduced. However, a Chapter 12 trustee potentially has responsibility for operating the debtor's farming business and for certain reporting requirements. *Compare* 11 U.S.C. § 1202 *with* 11 U.S.C. § 1302. Because wage withholding is rare in Chapter 12 and because the timing and amount of debtors' income is hard to accurately predict, assurance of good faith compliance with the plan is much more difficult and has been observed to create problems.

The mechanism for compensating standing trustees is found in 28 U.S.C. § 586. Because the United States Trustee system is now generally in place, most courts lack discretion to set or vary a standing trustee's percentage fee. That responsibility is given by 28 U.S.C. § 586 to the United States Trustee. In this district the standing Chapter 13 trustee currently operates by assessment of fees of 8% or less, although authorization exists to increase that fee to 10%. The fee in Chapter 12 is presently set at the maximum of 10% on the first $450,000 in payments under the plan and 3% on any payments in excess of $450,-000. *See* 28 U.S.C. § 586(e)(1)(B). No definition of "payments under the plan" is given either in the Bankruptcy Code or in Title 28, United States Code.

As previously stated, in Chapter 13 cases this Court has held that all payments on pre-petition obligations, assumed executory contracts and administrative claims are payments under the plan which are subject to the trustee's fee, whether the payments are made by the debtor or, more commonly,

by the trustee. The only consistent exception to that rule has been for payments made directly by debtors for periodic ongoing obligations, the terms of which exceed the length of the plan, which are not in default and which are not affected by the discharge. The Chapter 13 debtor also is limited in his ability to modify most of those obligations by language in § 1322(b). Even those exceptions may be something of a judicial gloss on the statute, however. Because the trustee's payments to modified claims secured by a debtor's personal property and to allowed unsecured claims are often sizeable, the Chapter 13 program has been able to operate without assessing statutory trustee fees for long-term obligations unaffected by the debtor's invocation of the bankruptcy laws.

What has happened in Chapter 12 is that debtors often have proposed, without challenge, to serve as disbursing agents for claims secured by real property mortgages and liens against equipment or other personalty and to pay directly the various land owners with whom the debtors have cash rent or share crop arrangements. This leaves for the trustee only the relatively small "disposable income" to be divided among holders of allowed unsecured claims. If only payments proposed to be disbursed by the trustee are subject to his fee, the revenue generated will not support a standing trustee's operation, nor will it compensate him for court appearances or attendance at creditors' meetings which are required by the statute. It is not merely an occasional case which carries this pattern, but the overwhelming majority of the Chapter 12 cases before this Court.

## CONCLUSIONS OF LAW

The Court finds that the trustee is charged with significant responsibility relating to the progress and success of a Chapter 12 plan. 11 U.S.C. § 1202(b). This Court believes it unduly complicates the trustee's ability to supervise and monitor the plan if the debtors make payments under the plan on pre-petition obligations or administrative claims, including those resulting from the assumption of unexpired leases or executory contracts, which are

either modified by the plan or not intended to survive the conclusion of the plan. Essentially, plans with such provisions give the trustee responsibility without the power to accomplish the associated duties or the control necessary to administer the plan properly. In addition, practically, a debtor's ability to successfully complete a confirmed plan is decreased if most or all of the payments are to be made without the supervision or intervention of the trustee. The Court believes both the feasibility and the effectiveness of a plan are greatly enhanced by generally requiring the trustee to be the disbursing agent for payments on all pre-petition obligations, assumed executory contracts and administrative claims except long-term debts not modified by the plan.

Based upon the foregoing concerns, the Court finds that adoption of the same approach found in Chapter 13 cases is an equitable and correct way to address the trustee fee issue. That solution permits the trustee to perform his duties with dignity and fair compensation, increases his ability to monitor and supervise plans, and insures that debtors pay their appropriate share of the costs required to administer the remedy which so significantly benefits their interests. The Court agrees with Judge Mahoney when she stated that:

> A chapter 12 debtor knows the statutory scheme of chapter 12 before filing a petition under it. Therefore, the chapter 12 debtor knows that a fee will be required to be paid in order to avail itself of the protections of chapter 12. The chapter 12 trustee's compensation depends on the percentage fees based upon payments made under chapter 12 plans. If very few payments are made under plans, the entire statutory scheme will be circumvented and the quantity, if not the quality, of chapter 12 trustees could diminish substantially.

*In re Hildebrandt,* 79 B.R. 427 (Bankr.D. Minn.1987).

Accordingly, the Court finds that payments on all pre-petition debts, assumed executory contracts and administrative claims, whether made by the trustee or,

more unusually, directly by the debtor, are payments under the plan which are subject to the trustee's fee. The only exception to this rule will be for periodic ongoing payments on long-term obligations, such as the obligation in this case to Emmett Newfer, not in default when the bankruptcy case is filed and neither modified by the plan nor subject to the discharge. Those payments are truly "outside" the plan. *See In re Logemann,* 88 B.R. 938 (Bankr.S.D.Iowa 1988). All other obligations to entities which are creditors pursuant to 11 U.S.C. § 101(9), whether modified or paid out during the term of the plan pursuant to the agreement between the parties, all payments for assumed executory contracts and all administrative claims are subject to the trustee's fee and are generally to be disbursed by the trustee.

The Court's holding means that payments on debtors' modified, "written down" secured obligations, even though not discharged when payments extend over a period which exceeds the length of the plan, are subject to the trustee's statutory fee during the three to five year period of the plan. This finding also means that, except in unusual circumstances, disbursement by the trustee will be favored, encouraged, and generally required. Exceptions to the trustee as disbursing agent may be permitted in special circumstances, but such payments will remain subject to the trustee's fee, although the actual fee may be collected from other payments received by the trustee.

The Court further finds that the United States Trustee, by reduction of the percentage fee, ought to correct any unfairness to debtors which may result if the trustee's fees are disproportionate to the work required. Ten percent on the first $450,000 and 3% on additional payments is, after all, the maximum permitted by law. A lower percentage may be required.

Based upon the foregoing, the trustee's objection to confirmation is sustained and confirmation of the debtor's plan is denied. The debtor is given twenty (20) days to propose a plan which is consistent with these findings or to take whatever other action with respect to this case as may be appropriate. If no such action is taken, the Court will dismiss this case.

IT IS SO ORDERED.

CALHOUN and COLE, JJ., concur in this opinion.