In re Wylda JUTILA, Debtor.

Wylda JUTILA, Appellant,

v.

Brett N. RODGERS, Trustee; Mark A. Van Allsburg, Assistant U.S. Trustee;

and

Independent Bank–West Michigan, Appellees.

Bankruptcy Nos. NG 88–02481, HG 88–2472.

No. G88–852 CA1.

United States District Court, W.D. Michigan, S.D.

April 25, 1989.

William R. Farley, Grand Rapids, Mich., for appellant-plaintiff.

Brett N. Rodgers, Grand Rapids, Mich., trustee.

Mark Van Allsburg, Grand Rapids, Mich., U.S. trustee.

Warner, Norcross & Judd by Patrick E. Mears, Grand Rapids, Mich., for Brett N. Rodgers.

## OPINION

ENSLEN, District Judge.

This case is before the Court on appeal from a recent bankruptcy court decision. In a bench opinion of October 18, 1988, the bankruptcy court refused to approve a second amendment to a debtor's proposed Chapter 13 plan filed by the debtor, Wylda Jutila, also the appellant in this case. Instead, requiring one modification, the court approved a slightly different version of her plan that same day. Appellant argues that the bankruptcy court did not have sufficient basis to deny the original version of her plan. Appellee contends that the bankruptcy court was amply justified in refusing to allow appellant's amended plan. Appellee requests that this Court dismiss the appeal and grant attorney's fees and costs to appellee.

### Background

Wylda Jutila ("Appellant"), is an individual who resides at 16879 Monroe Road in Morley, Michigan. Record on Appeal, Document 4 ("Record at 4"). Appellant filed a Chapter 13 petition with the United States Bankruptcy Court for the Western District of Michigan (the "Bankruptcy Court") on August 8, 1988, thereby commencing her Chapter 13 case. Record, at 4. This case

was then assigned to Bankruptcy Judge Laurence E. Howard for administration and Brett N. Rodgers ("Trustee") was appointed the Standing Chapter 13 trustee. Debtor owns fee title to her principal residence in Morley, Michigan (the "Subject Realty") that is subject to a mortgage lien held by Independent Bank–West Michigan ("Bank"). *Id.*

Appellant is presently employed as a cook for Grandview Resident Home located in Walker, Michigan and earns approximately $855.00 per month in net wages. The Monthly Family Budget set forth in Appellant's Chapter 13 Statement indicates that her continuing monthly mortgage payment of $275.00 payable to Bank and her monthly tax escrow payment of $108.00 would be paid "inside" the plan through the Trustee. *Id.* Appellant's Schedule of Debts states that the amount due Bank on its mortgage loan was $26,955.88 at the time she filed her Chapter 13 petition and that she had not paid the taxes due the Mecosta County Treasurer assessed against the Subject Realty for the years 1986 and 1987. The amount of these tax arrearages was listed at $2,588.00 in Appellant's Statement of Real Property. Finally, the Chapter 13 Statement listed the market value of the Subject Realty at $69,200.00, which Appellant calculated by multiplying the state equalized value of $34,600.00 by a factor of two. *Id.*

After Appellant commenced her Chapter 13 case, Bank timely filed with the Trustee two separate proofs of secured claims arising under its mortgage on the Subject Realty. The first proof of claim listed the entire amount due under the mortgage, namely, the "payoff balance," at $27,218.47, and the monthly mortgage payments of $267.30. Bank filed the second proof of claim for the mortgage arrearages; their total amount was stated as $1,376.45.

On September 15, 1988, Appellant filed a first amendment to her proposed Chapter 13 plan. Record, at 5. This document, entitled "Amendment to Chapter 13" and dated September 14, 1988, provides that Appellant would remit the necessary amounts to pay her obligations under the plan within the five-year limit set forth in 11 U.S.C. § 1322(c). In this amendment, Appellant also promised to turn over to the Trustee "one-half of all future tax refunds received by [her] during the pendency of" the Chapter 13 case. *Id.*

Also on September 15, 1988, Appellant filed a second amendment to her proposed plan. Record, at 6. This amendment provided that Appellant's employer would pay directly to Bank the sum of $354.00 per month in satisfaction of the continuing mortgage payments and to establish a tax escrow fund. Consequently, Appellant's biweekly payments to be made to the Trustee would be reduced from $257 to $80. The purpose of this second amendment was to ensure that the plan did not exceed the five-year limit on plans contained in 11 U.S.C. § 1322(c):

> The reason for said amendment is to ensure said plan does not exceed sixty (60) months. If the continuing payments were to remain inside the plan[,] [Appellant] would pay $1,290.00 more in commission to the Chapter 13 Trustee[;] the plan would then run over sixty (60) months.

*Id.*

The hearing on confirmation of Appellant's plan was conducted by Bankruptcy Judge Howard on October 18, 1988, in Grand Rapids. Immediately before this plan was considered for confirmation, the Court held a hearing on a similar plan filed by another Chapter 13 Debtor who was also represented by Appellant's counsel. Record, at 8. In that hearing, the Trustee, the Assistant United States Trustee and counsel to the mortgagee objected to confirmation of a plan that provided for continuing mortgage payments to be made by the debtor's employer directly to the mortgagee. After considering the arguments made for and against this proposed plan provision, Judge Howard ruled that he would not confirm the plan if it contained this provision. *Id.* In his bench opinion, Judge Howard noted that Standing Chapter 13 trustees currently charge a commission of only 6.5% on plan payments, which

is substantially less than what had been charged under prior law. Judge Howard expressed his opinion, based upon his experience, that Standing Chapter 13 trustees should make all distributions to creditors. The mechanism of either the debtor or his employer making payments to creditors "outside" the plan was characterized by Judge Howard as a "poor way to do it." Judge Howard stated:

> I think it ought to be done here centralized and hopefully we can get the commissions down so that they're sufficient to pay the costs alone but not so oppressive that the debtors, particularly your small farmers, would be unable to cope with them. So I'm going to deny your request and I will confirm the plan if •payments go through the trustee at the 6.5 percent.

*Id.*

Next, Judge Howard considered Appellant's plan for confirmation. The Trustee advanced the same arguments he used in the previous Chapter 13 case opposing confirmation. Judge Howard declared that, since the two cases were almost identical, he did not need to entertain further arguments and stated that he would deny confirmation. At that point, Appellant's counsel agreed to delete the direct payment provision contained in the second amendment to the plan and to consent to Appellant's payment of $290 to the Trustee on a biweekly basis. *Id.*

### Discussion
### Standard of Review

Bankruptcy Rule 8001 provides that an appeal as of right may be taken from a final judgment, order, or decree of a bankruptcy judge to the district court. On appeal a district court may affirm, modify or reverse the bankruptcy court's judgment, order, or decree. It may also remand the case with instructions for further proceedings. The bankruptcy court's findings of fact will not be set aside unless clearly erroneous. Bankruptcy Rule 8013. Conclusions of law, or mixed questions of law and fact, are reviewed under a *de novo* standard. *See e.g., In re Fasano–Harriss Pie Co.*, 71 B.R. 287, 290 (Bankr.W.D.Mich. 1987). Finally, it has been said that a district court may consider any issue presented by the record even if the issue was not presented to the bankruptcy court. *Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1379 (9th Cir.1985).

*Chapter 13 Plan.* The issue before me on this appeal is whether the bankruptcy court erred in refusing to confirm a Chapter 13 plan that directed the debtor's employer to make continuing mortgage payments directly to the debtor's mortgagee "outside" the plan and that provided debtor would pay mortgagee arrearages "inside" the plan through the standing Chapter 13 trustee. As I will discuss in more detail *infra*, I do not believe that the bankruptcy court so erred. The bankruptcy court properly denied the debtor's request.

Congress enacted Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301, *et seq.*, to expand and replace the "wage earner" provisions of old Chapter XIII of the Bankruptcy Act of 1898. Under the new Chapter 13, "individuals with regular income" who carry a relatively small debt load are entitled to propose a plan to restructure and repay their debts over a period not to exceed five years measured from the date of the plan's confirmation.[1] *Citizens Trust & Savings Bank v. Schafer*, 99 B.R. 352 (W.D.Mich.1989). In the ordinary Chapter 13 case, the debtor will devote a portion of

---

1. The term "individual with regular income" is defined in 11 U.S.C. § 101(29) to mean individuals who have regular income sufficiently stable to make payments under a Chapter 13 plan. Thus, self-employed individuals, welfare recipients and those who receive other regular income from public or private sources may qualify for Chapter 13 relief. *See, e.g., In re Hammonds*, 729 F.2d 1391 (11th Cir.1984).

Section 109(e) of the Bankruptcy Code, 11 U.S.C. § 109(e), imposes a debt ceiling on eligibility for Chapter 13 relief. Debtors who, on the filing date, have matured and liquidated unsecured debts of $100,000 or more or who have matured and liquidated secured debts of $350,000 or more may not file Chapter 13 petitions. The debt ceilings are not doubled for a husband and wife filing a joint Chapter 13 petition. *See generally In re Pearson*, 773 F.2d 751 (6th Cir.1985).

his future income to fund the payments he is required to make to creditors under the confirmed plan. These monies will typically be transmitted to the Chapter 13 trustee by the debtor and/or his employer for distribution to creditors. The debtor will retain most, if not all, of his property during and after he performs his plan obligations and will be discharged from most of his pre-petition debts upon competition of his plan. The bankruptcy court is charged with confirming the plan if it is properly done, that is, the plan must meet the requirements of § 1322. 11 U.S.C. § 1322.

■ Chapter 13 grants extraordinary protections to holders of mortgages in the principal residences of debtors. Under most circumstances, Chapter 13 debtors may propose plans that "rewrite" the payment terms of most of their secured and unsecured debts, but a claim that is secured only by mortgage on the debtor's principal residence may be modified only in one way. Section 1322(b)(2) of the Code, 11 U.S.C. § 1322(b)(2), provides that a Chapter 13 plan may modify the rights of secured creditors *other than* those creditors holding a claim secured only by a lien in realty that serves as the debtor's principal residence. The exception to this rule under the Code is that the Chapter 13 plan may cure arrearages arising out of the debtor's home mortgage if the cure is accomplished within a reasonable time. *See generally In re Glenn,* 760 F.2d 1428 (6th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *In re Dockery,* 34 B.R. 95 (Bankr.E.D.Mich.1983).

■ Under Chapter 13, Congress created a presumption that trustees should disburse payments made to creditors under the confirmed plan. Duties of Chapter 13 trustees are set forth in 11 U.S.C. § 1302. Those duties include advising and assisting the debtor in the performance of his plan and in ensuring that the debtor begins making payments under this plan. 11 U.S.C. §§ 1302(b)(3) and (4). These duties require a trustee to monitor a debtor's performance under a plan throughout the entire Chapter 13 case. *See* 5 *Collier on Bankruptcy* ¶ 1302.01[3][A][x] (15th ed. 1988). If a debtor fails to make timely payments under his plan, the trustee is authorized by statute to seek the dismissal or conversion of the Chapter 13 case and also has standing to request modification of the plan. 11 U.S.C. §§ 1307(c), 1329.

The primary means whereby a Chapter 13 trustee effectively supervises the performance by a debtor of his plan obligations is to require that most, if not all, payments made under the plan be disbursed by him. Section 1326(c) of the Bankruptcy Code, 11 U.S.C. § 1326(c) provides that the trustee should act as disbursing agent for payments made to creditors under the plan:

> Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.

The trustee is aided in acting as an effective disbursing agent by the power of the bankruptcy court under 11 U.S.C. § 1325(c) to direct third-party sources of the debtor's income to "pay all or any part of such income to the trustee." [2]

■ Under the Code, a bankruptcy court has discretion to permit debtors to make payment directly to some secured creditors, thereby avoiding the deduction of the trustee's statutory commission from these payments.[3] *See, e.g., In re Waldman,* 75 B.R.

---

**2.** This statute is frequently invoked by trustees who ask the court to enter a payroll deduction order directing the debtor's employer to pay a certain portion of debtor's take-home pay directly to the trustee in order to fund payments made to creditors under the confirmed plan.

**3.** Since 1986, amendments to the Code removed the administration of the Chapter 13 trustee system from the bankruptcy court and placed it under the United States Trustee. Two major changes were made relating to the issue here.

First, the bankruptcy court no longer has the authority to make adjustments to the trustee's commission. The commission, while limited to 10%, is determined by the United States Trustee. Second, under prior law, 11 U.S.C. § 1302(e) allowed the trustee to be paid a commission on *all* payments made under the plan. It did not matter who the disbursing agent was. However, under the amended law, 28 U.S.C. § 586(e)(2) controls the compensation paid to the trustee. It reads:

1005 (Bankr.E.D.Pa.1987); *In re Case*, 11 B.R. 843, 846 (Bankr.D.Utah 1981). One bankruptcy judge formulated his standard for allowing payments outside the plan:

It would seem proper and equitable that in all cases where the debtor proposed an alternative form of disbursement, however, that the trustee or the creditor or creditors affected should be allowed the opportunity to object. Upon objection to the form of distribution proposed, the Court would be inclined to require disbursements through the trustee in the absence of some compelling reason to the contrary.

*In re Case*, 11 B.R. 843, 846 (Bankr.D.Utah 1981).

More specifically, a number of decisions prohibit Chapter 13 debtors from paying continuing mortgage payments outside the plan when there exists an arrearage under the mortgage loan at the time the Chapter 13 case is commenced. *See, e.g., In re Foster*, 670 F.2d 478, 488 (5th Cir.1982); *In re Tartaglia*, 61 B.R. 439 (Bankr.D.R.I. 1986); *In re Weber*, Case No. BK 87–1658 (Bankr.D.Neb., Sept. 28, 1988). The rationale of these decisions is that the language contained in 11 U.S.C. § 1322(b)(5)—namely, that a plan shall provide for curing defaults within a reasonable time and maintaining payments while the case is pending—effectively prohibits the bifurcation of mortgage arrearage and future mortgage payments.

*In re Foster* enunciated a strict rule where there is a current portion of the mortgage claim proposed to be made "outside" the plan and there are arrearages on the mortgage claim. Whereas the *Foster* court suggested that a bankruptcy court might have discretion to approve other types of claims to be made outside the plan, where there exists an arrearage on a mortgage claim, the Fifth Circuit was clear that current mortgage payments should not be made outside the plan. 670 F.2d at 488. It stated:

The bankruptcy court expressly recognized in its memorandum opinion that a debtor could be designated as disbursing agent for some payments under the plan. Nevertheless, the bankruptcy court denied confirmation because the plan called for the making of the current mortgage payments "outside the plan." Observing that nowhere in the Bankruptcy Code is there any statement whether either secured or unsecured claim payments can be handled outside the plan, the court concluded that "[o]n balance, Chapter 13 policy requires that all payments be made within the plan." Although we conclude that the bankruptcy court went too far in stating that all claims must be treated within the terms of a proposed plan, we hold that a plan cannot provide that the current portion of a mortgage claim will be made "outside the plan," as that phrase was used by the bankruptcy court, when the arrearages on the mortgage claim are being cured under § 1322(b)(5).

Though appellant suggests that the 1986 amendments and the resulting changes regarding the trustee's commission, see *supra* note 3, should support a different decision in this case as opposed to the result in *In re Case* or *Foster*, the Court believes that this authority is applicable here. Prior to 1986, courts allowed debtors to make some payments to secured creditors outside the Chapter 13 plan—avoiding the trustee commission—when adequate safeguards were used, for example, restrictions on any modification of the security interest of a secured claimant. In spite of this, some courts, *In re Case* and *Foster*, for instance, chose stricter standards when the security interest was a mortgage on the principal residence of the debtor. The concerns, reasoning, and policy issues are equally applicable to the instant case. Moreover,

Such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under Chapter 12 or 13 of Title 11 for which such individual serves as standing trustee.

Thus, at present, who disburses the funds is relevant to the trustee's fee. If payment, for example, goes directly from the debtor's employer to a creditor in a direct payroll plan, the trustee does not "receive" that payment and collects no commission.

whereas the bankruptcy court before 1986 could limit a trustee's commission, there is still a safeguard for potential excess, the commission is limited to 10%. Finally, as to the facts before the bankruptcy judge here, I note that this is not a close case to challenge excessive commission—the trustee here, as I understand is standard, charges a 6½% commission on each mortgage payment.

■ Therefore, after taking into consideration the history of Chapter 13; the special protection that section provides to holders of mortgages in the principal residences of debtors; the presumption that a Chapter 13 trustee should disburse payments to creditors; and the case law bearing on this issue, the bankruptcy court properly denied appellant's request that mortgage and tax escrow payments be made to the bank by her employer through a payroll deduction plan. Public policy objectives also support the bankruptcy court's decision.[4] The court below applied the weight of authority, used sound legal reasoning, and—in short—properly decided the facts and issues before him.

I will thus affirm the bankruptcy court's decision. Appellee also requests assessment of attorney's fees and costs against appellant, however, no good cause having been shown, I will deny that request.

---

**4.** As the court in *In re Case* stated:

> The rationale behind this preference for disbursement under the plan through the trustee is readily apparent. It is primarily the trustee's duty to insure that payments are made under the plan and to supervise execution of the plan. Therefore, a creditor should have the right to insure protection of its interests under the plan by refusing to deal further directly with the debtor with whom it may have experienced problems in the past. Rather, the creditor should be entitled to have the trustee more effectively exercise her supervisory duty by taking the responsibility of collecting and disbursing the payments to the creditor, leaving to the trustee the hassle of insuring the payments are being made and of bringing to the attention of the court when the payments are in arrears and the plan is not being carried out as confirmed. Similarly, if the trustee feels that she can more effectively fulfill her supervisory duty over the execution of the plan by having all payments made through her, in the absence of some convincing reason either business or otherwise to the contrary, she ought to be entitled to require payments to be made directly to her.

*In re Case,* 11 B.R. 843, 846 (Bankr.D.Utah 1981).