IN RE: Jose VELA, III and Lisa Marie Vela, Debtors.

Case No. DG 12–06512

United States Bankruptcy Court, W.D. Michigan.

Signed March 13, 2015

David C. Andersen, Rebecca L. Johnson–Ellis, Jeremy Shephard, David Andersen & Associates PC, Grand Rapids, MI, for Debtors.

### MEMORANDUM OF DECISION AND ORDER

PRESENT: HONORABLE SCOTT W. DALES, Chief United States Bankruptcy Judge

### I.  INTRODUCTION

This matter comes before the court on an objection by the chapter 13 trustee to a post-confirmation plan amendment. The amendment, if approved, would authorize the Debtors to pay their mortgage creditor directly (now that they have cured the prepetition arrearage) rather than through their trustee, as their confirmed plan currently requires.

The court heard oral argument on January 21, 2015 and permitted the parties to submit post-argument briefs, which they did. After carefully considering the oral and written arguments of counsel, the court concludes that it should not approve the post-confirmation amendment over objection.

### II.  JURISDICTION

The United States District Court has jurisdiction over the bankruptcy case of Jose and Lisa Marie Vela (the "Debtors") pursuant to 28 U.S.C. § 1334(a), and has referred the case and all proceedings to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.). The contested matter, involving a proposed modification of a chapter 13 plan, is a core proceeding in which the court may enter a final order, subject to appellate review. 28 U.S.C. § 157(b)(2)(A), (L), and (O).

### III.  ANALYSIS

#### A.  Historical and Procedural Background

The Debtors filed a joint petition for relief under chapter 13 with this court on July 13, 2012 after falling behind on their monthly payments to their mortgage lender, Carrington Mortgage Services ("Carrington Mortgage"), and others. As of the petition date, according to Carrington Mortgage's unchallenged proof of claim, the arrearage on their home loan was $3,168.15 (the "Arrears").

Availing themselves of the "cure and maintain" provisions under 11 U.S.C. § 1322(b)(5),[1] the Debtors proposed to "cure" the Arrears, and "maintain" current payments on their mortgage. Following the custom in our district and the default rule prescribed in § 1326(c), the Debtors proposed that the chapter 13 trustee, Brett N. Rodgers (the "Trustee"), would make all payments to creditors, including the cure payment and on-going monthly payment to Carrington Mortgage. To fund these payments, and to provide for other creditors, the Debtors proposed in their original plan to make monthly payments to the Trustee in the amount of $1,800.00. Two months after the Debtors filed their petition, and shortly after they filed their only pre-confirmation amendment to the plan (DN 26), the court confirmed the plan, as amended, in a text order entered on September 12, 2012.[2]

Several months later, the Debtors' child support obligations increased substantially, prompting them to file their first post-confirmation plan modification on April 2, 2013, reducing their plan payment to $1,407.69 per month beginning June 1, 2013. No interested parties objected to the first plan amendment and the amendment—which was not disapproved—took effect pursuant to § 1329(b)(2).

As presently in effect, the Plan directs the Trustee to use the Debtors' $1,407.69 monthly plan payment to pay Carrington Mortgage $1,038.00 each month on the on-going mortgage payment, plus an unspeci-

fied share of funds "pro rata with other secured creditors" toward the Arrears. *See* Plan (DN 4) at ¶ III.C.1.a. The Plan also provides for administrative and other priority claims, including approved fees of Debtors' counsel, the Trustee's commission, taxes, and domestic support obligations. *See* Plan (DN 4) at ¶ III.A. As for unsecured creditors, the plan provides for:

Payment of a pro-rata share of a fixed amount of $2,500 set aside for creditors in this class or for the ACP, whichever pays more. This fixed amount shall be reduced by additional administrative expenses including attorney fees. However, this fixed amount shall not be reduced below the liquidation value specified in Provision I.B.

*See* Plan (DN 4) at ¶ III.F.1. From all that appears in the record, the Debtors and the Trustee performed according to the Plan.

Sometime in 2013, with the court's permission, the Debtors applied for and obtained assistance through Michigan's Helping Hardest Hit Homeowners Program, also known as "Step Forward Michigan." Using these "Hardest Hit" funds, the Debtors satisfied the Arrears, and thereafter filed the Debtors' Second Motion to Modify Confirmed Chapter 13 Plan on December 2, 2014 (the "Second Amendment," DN 67).[3] The Second Amendment provides in relevant part as follows:

Motion to Modify the Confirmed Plan (DN 42); Motion to Modify Plan to Permit Execution of Second [sic] Motion to Modify the Confirmed Plan (DN 67, the amendment that drew the Objection). To avoid confusion, the court will adopt the Debtors' characterization of this amendment as their second post-confirmation amendment, notwithstanding the filing of DN 53 and LBR 3015 which is designed to avoid this sort of confusion.

---

1. All statutory references in this opinion, indicated with the "§" symbol, refer to title 11 of the United States Code.

2. For convenience, the court will refer to the original plan, as amended both before and after confirmation, as the "Plan."

3. Rather than filing post-confirmation *amendments,* the Debtors have filed *motions* to modify the confirmed plan. *See* Debtors' First

A. The mortgage with Carrington Mortgage Services shall no longer be paid by the Trustee but shall be paid directly by the Debtors beginning with the February 2015 payment pursuant to ¶ III(E) of the plan filed July 13, 2012.

B. The plan payment is reduced to $500.00 per month effective January 1, 2015.

C. In all other respects the chapter 13 plan remains the same.

*See* Second Amendment (DN 67). The Trustee objects to the Second Amendment, making three arguments summarized as follows:

1. The Second Amendment does not fit within any of the three categories of post-confirmation amendments authorized under § 1329(a);

2. Because the Debtors proposed to pay Carrington Mortgage through the Trustee's office at confirmation, § 1322(b)(5) obligates them to continue paying the ongoing mortgage payments through the Trustee's office even after the Arrears are satisfied; and

3. The feasibility concerns supporting the original decision to make mortgage payments through the Trustee's office remain, despite the fact that a third party has paid the Arrears.

*See* Trustee's Objection to Debtors' Second Motion to Modify the Confirmed Plan at ¶ 6(a) (the "Objection," DN 69).

B. Legal Analysis

The success of any chapter 13 bankruptcy case depends upon compliance with a plan that binds the debtor, creditors, and other interested parties. Congress, therefore, put a premium on finality. *See* 11 U.S.C. § 1327. It recognized, however, that throughout the three-to-five year term of a chapter 13 plan, debtors may experience changes in their financial and other circumstances, calling for flexibility. The Bankruptcy Code, therefore, strikes a balance between finality and flexibility by authorizing post-confirmation modifications, but only for limited purposes:

> At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments;
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
>
> (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor . . .

11 U.S.C. 1329(a);[4] *see also Ford Motor Credit Co. v. Parmenter (In re Parmenter)*, 527 F.3d 606, 609 (6th Cir.2008) (court may modify a plan in limited circumstances as specified in § 1329(a)); *Chrysler Financial Corp. v. Nolan (In re Nolan)*, 232 F.3d 528, 530–31 (6th Cir.2000) (same). In addition, as the Debtors concede, any post-confirmation modification must also satisfy § 1322(a) and (b), § 1323(c), and all of the requirements of § 1325(a). This latter subsection incorporates specific confirmation requirements, such as feasibility and good faith, as well as the provisions of chapter 13 and the Bankruptcy Code generally.

The Debtors argue that their Second Amendment satisfies § 1329(a)(1) for two

---

4. Section 1329(a)(4) clearly has no application to the Debtors' case at this time.

related reasons. First, "[it] will increase the amount of payments to be received on all creditor claims," and this payment increase will "reduce the amount of time for such payments to the creditor claims which complies with § 1329(a)(2)." *See* Brief in Support of Debtors' Second Post–Confirmation Modification of Chapter 13 Plan ("Debtors' Brief," DN 72) at p. 4. The Trustee counters that even with the increased payments, unsecured creditors will still receive nothing, given that the approved fees of Debtors' counsel must be paid first as a cost of administration. Accordingly, says the Trustee, it is not the case that all creditors will be better off if the court approves the amendment.

The Trustee concedes, however, that the Second Amendment will shorten the plan term by two months, meaning that the creditors provided for by the plan will be paid sooner. Nevertheless, he argues that because the ongoing monthly payment to "maintain" the current mortgage payment to Carrington Mortgage will not change (and the impact on other creditors is incidental), the amendment falls outside § 1329(a). *See* Trustee's Brief in Support of Objection to the Debtor's Second Motion to Modify the Confirmed Chapter 13 Plan (DN 73) at pp. 8–9.

■ For several reasons, the court finds that the Debtors have brought the Second Amendment within the terms of § 1329(a). First, the Second Amendment reduces the plan term, albeit modestly, thus reducing the time for payments under § 1329(a)(2). Second, by taking the Carrington Mortgage payment "outside the plan," the Second Amendment, would in fact, reduce the Trustee's commission by approximately $20.00 each month. *See* 28 U.S.C. § 586(e)(2) (authorizing chapter 13 standing trustees to collect percentage fee "from all payments received … under plans … under chapter 12 or 13 of title 11

…"). The Trustee's commission is included among the class of administrative claims, so the Second Amendment arguably reduces "the amount of payments on claims of a particular class provided for by the plan." *See* 11 U.S.C. § 1329(a)(1); Plan at ¶ III.A.2 (providing for "Allowed trustee fee"). Third, although not cited by the parties, § 1329(a)(3) also comes into play because the Debtors are proposing to "alter the amount of the distribution" to account for Carrington Mortgage's receipt of the Hardest Hit Funds. Because Carrington Mortgage is a creditor whose arrearage claim is "provided for by the plan," and the Step Forward Michigan's payment is a "payment of [a] claim other than under the plan," the Second Amendment also meets the requirements of § 1329(a)(3). *See* 11 U.S.C. § 1329(a)(3).

Nevertheless, satisfying § 1329(a) is a necessary, but not sufficient, condition for modification. As both parties agree, the Debtors must also meet the requirements of § 1329(b), including the numerous referenced and cross-referenced provisions included therein. *See In re Long,* 453 B.R. 283, 288 (Bankr.W.D.Mich.2011); 11 U.S.C. § 1329(b) (providing that "Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section."); *see also* 11 U.S.C. § 1325(a) (plan (and amendments) must comply with "the provisions of this chapter [13] and with the other applicable provisions of this title.").

■ The Trustee argues, therefore, that even if the Second Amendment satisfies § 1329(a), whether the Trustee should pay creditors, or whether the Debtors may do so directly, is a question that can be raised only at confirmation:

> …if Debtors propose to pay the prepetition arrearage and maintain the ongoing mortgage payments through the

Trustee *at the time of confirmation,* Debtors are then obligated to maintain the ongoing mortgage payment through the Trustee even after the pre-petition mortgage arrears are cured.

*See* Objection at ¶ 6(a) (emphasis added). This argument recognizes that, in enacting § 1326(c), "Congress created a presumption that trustees should disburse payments made to creditors under the confirmed plan." *In re Jutila,* 111 B.R. 621, 624 (W.D.Mich.1989) (Enslen, J.); *see also In re Glenn,* 1999 WL 68570, *2 (6th Cir. 1999) (unpublished opinion noting rebuttable "presumption" under § 1326(c) that the trustee makes payments to creditors). Section 1326(c)—the provision of the Bankruptcy Code bearing most directly on the question of who should pay creditors—states as follows:

> Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.

11 U.S.C. § 1326(c). Consequently, pursuant to the statute, the only way to defeat the presumption that the trustee is the entity who should pay creditors is to include in the plan or confirmation order a provision allowing direct payments by a debtor or some entity other than the trustee. *See* 11 U.S.C. § 1326(c). Neither the Plan nor the confirmation order in this case contains such a provision.

■ The Second Amendment is not, at this point, the "Plan" within the meaning of § 1326(c). Although a plan as amended "is the plan" according to § 1329(b)(2), this definition applies only if the amendment is not "disapproved," a rather curious yet purposeful description of the process of making an amendment effective.[5] *See* 11 U.S.C. § 1329(b)(2). During the "notice and a hearing" period, an amendment is simply a proposal, and cannot in any respect be regarded as part of the plan itself. *Id.* To hold otherwise would artificially transform a mere proposal into a binding provision, even before the time for resolving objections has passed. Similarly, an order approving a post-confirmation amendment is not a "order confirming the plan" within the meaning of § 1326(c): there is only one confirmation hearing and only one confirmation order in any chapter 13 case. *In re Davis,* 439 B.R. 863, 866 (Bankr.N.D.Ill.2010) (Wedoff, J.). The Second Amendment, therefore, does not conform to § 1326(c) and so it fails to meet the requirements of §§ 1325(a)(1) and 1329(b)(1).

■ In opposing the Second Amendment, the Trustee also asserts the "feasibility" requirement of § 1325(a)(6) which the court finds is closely related to the presumption under § 1326(c) that the trustee shall disburse the plan payments to creditors. As is the custom in our district and as the Debtors acknowledge in their brief, debtors who are behind on their mortgage payments at the time of confir-

**5.** As the court observed a few years ago, an order approving a chapter 13 plan amendment "is not strictly necessary, since the statute provides that 'the plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.'" *In re Deavila,* 431 B.R. 178 (Bankr.W.D.Mich. 2010) (citing § 1329(b)(2)). Of course, creditors and other interested parties may, as a practical matter, forfeit statutory rights during the amendment process by failing to timely object, resulting in binding plan provisions that are in some respects inconsistent with the Code. Indeed, plan amendments in this district that change the disbursing agent have been effective notwithstanding § 1326(c), "after notice and a hearing" and in the absence of objection prompting the court to disapprove them. *Cf. United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) (plan including extra-statutory "discharge by declaration" provision is binding upon student loan creditor who failed to object).

mation must make their mortgage payments "inside" the plan, or stated more precisely, through the trustee as disbursing agent. The idea behind the default procedure prescribed in § 1326(c) is that debtors who have proven themselves unable to stay current on their pre-petition mortgage payments require the post-petition discipline and structure of making one periodic payment to a trustee, usually through a payroll order or similar mechanism, who then disburses it to the mortgage lender and other creditors in accordance with the plan.

Relying on a standing trustee to make payments through his or her automated and sophisticated payment system avoids the frequently unsuccessful practice of a debtor's making multiple payments by personal checks to various creditors. A trustee can "more effectively exercise her supervisory duty by taking the responsibility of collecting and disbursing the payments to the creditors, leaving to [him] the hassle of insuring the payments are being made and of bringing to the attention of the court when the payments are in arrears and the plan is not being carried out as confirmed." *Jutila,* 111 B.R. at 626 n. 4.

■ Furthermore, if a payment dispute arises, the availability of a trustee's regularly-audited records is exceedingly helpful to the parties and the court. By interposing a trained, regulated, and independent neutral between debtor and creditor, the "trustee pays" presumption contributes to the feasibility of many chapter 13 plans, and inspires creditor confidence and participation in the system. Consequently, considering the resources and expertise of a standing trustee (as compared to the average person seeking relief under title 11), the presumption under § 1326(c) that a trustee will make payments to creditors ensures better record-keeping and, in the court's experience, a greater chance of suc-

cess under chapter 13. The presumption, rebuttable only at confirmation, promotes feasibility.

To summarize, the issue of who would serve as the disbursing agent was (or could have been) raised at confirmation. Given the court's reading of § 1326(c) and the policies supporting that provision, and given the principles of finality governing a confirmed plan, the court will not revisit the question at this time. *Cf. In re Storey,* 392 B.R. 266, 272 (6th Cir. BAP 2008) ("§ 1327 precludes modification of a confirmed plan under § 1329 to address issues that were or could have been decided at the time the plan was originally confirmed").

■ Even if the court were free under the statute to revisit the question, in the absence of a stronger showing than the Debtors made in this case, the court would nevertheless defer to the Trustee's opinion on the matter:

...[I]f the trustee feels that [he] can more effectively fulfill [his] supervisory duty over the execution of the plan by having all payments made through [him], in the absence of some convincing reason either business or otherwise to the contrary, [he] ought to be entitled to require payments to be made directly to [him].

*In re Case,* 11 B.R. 843, 846 (Bankr. D.Utah 1981) (cited approvingly in *Jutila,* 111 B.R. at 626 n. 4).

## IV. CONCLUSION AND ORDER

Because the Second Amendment does not meet the requirements of § 1329(b), the court will disapprove it, without prejudice to future amendment in conformance with the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Trustee's Objection (DN 69) is SUSTAINED and the Debtors'

Second Post–Confirmation Amendment (DN 67) is DISAPPROVED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005–4 upon the Debtors, Rebecca L. Johnson–Ellis, Esq., Brett N. Rodgers, Esq., Elizabeth Clark, Esq., and the United States Trustee.