36 F.3d 723
 63 USLW 2217, Bankr. L. Rep. P 76,099
 In re Philip WAGNER; Doris Wagner, Debtors.
Philip WAGNER; Doris Wagner, Debtors-Appellees,
v.
Phillip D. ARMSTRONG, Trustee-Appellant.
In re Robert L. MARTIN; Margie Martin, Debtors.
Robert L. MARTIN; Margie Martin, Debtors-Appellees,
v.
Phillip D. ARMSTRONG, Trustee-Appellant.
In re John A. HOFF; Irene M. Hoff, Debtors.
John A. HOFF; Irene M. Hoff, Debtors-Appellees,
v.
Phillip D. ARMSTRONG, Trustee-Appellant.
In re Darrell Leroy LUTES; Marlene Jo Lutes, Debtors.
Darrell Leroy LUTES; Marlene Jo Lutes, Debtors-Appellees,
v.
Phillip D. ARMSTRONG, Trustee-Appellant.
 No. 93-3885.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 17, 1994.
Decided Sept. 20, 1994.
 
 Phillip D. Armstrong, argued pro se.
 Sheldon Smith, Bismarck, ND, argued, for appellees.
 Before BOWMAN and LOKEN, Circuit Judges, and STEVENS,* District Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 Phillip Armstrong, the trustee in these four consolidated Chapter 12[1] bankruptcy actions, appeals the judgment of the District Court[2] reversing the Bankruptcy Court and denying trustee's fees for payments made directly by the debtors to impaired[3] secured creditors. We affirm.
 
 I.
 
 2
 Debtors Doris and Philip Wagner, Robert and Margie Martin, John A. and Irene M. Hoff, and Darrell Leroy and Marlene Jo Lutes are family farmers in North Dakota. The four couples, separately and at different times between 1988 and 1991, petitioned for Chapter 12 reorganization and protection, and the Bankruptcy Court for the District of North Dakota confirmed a Chapter 12 plan for each. Each of the debtors had secured creditors whose rights became impaired under the debtors' bankruptcy plans.
 
 
 3
 After the court confirmed their plans, the debtors began to fulfill their obligations to the impaired secured creditors by making direct payments to them. The debtors paid no fees to Armstrong for these transactions, relying on language in their plans that appears to exclude trustee's fees where the debtor makes direct payments to creditors.
 
 
 4
 On November 27, 1992, Armstrong filed motions to dismiss the bankruptcy actions of these debtors on the grounds that the debtors had failed to pay trustee's fees on plan payments made directly by the debtors to their impaired secured creditors. The Bankruptcy Court consolidated the cases and granted the motions, ruling that a debtor cannot avoid the payment of trustee's fees on impaired claims by making direct payments to creditors. The debtors appealed, and the District Court entered an order reversing the Bankruptcy Court on August 30, 1993. Observing that the bankruptcy code does not permit or prohibit expressly the direct payment by the debtor of impaired secured claims, the court concluded that, as these are confirmed plans and as their language does not contradict the bankruptcy code, the provisions of the plans relied upon by the debtors are valid, and thus the debtors' direct payments to secured creditors are not subject to trustee's fees. After filing a motion for rehearing in the District Court on September 4, 1993, which motion was denied on November 16, 1993, Armstrong filed this notice of appeal on November 19, 1993.
 
 
 5
 Shortly thereafter, the debtors filed a motion to dismiss this appeal as untimely, arguing that this Court lacks jurisdiction over the appeal because Armstrong failed to comply with District of North Dakota Local Bankruptcy Rule 12(g).[4] This argument is dead on arrival, however, for Rule 12 was eliminated by the District of North Dakota in 1992 when it republished its local rules. In re Adoption of Local Rules of Bankruptcy Procedure for the District of North Dakota, Order of June 8, 1992. Thus, Rule 12 is not applicable to this case, the motion for rehearing was proper, during the pendency of the motion the time for filing an appeal was tolled under Federal Bankruptcy Rule 8015, 11 U.S.C. app. Rule 8015 (1988), and Armstrong's appeal is timely.
 
 
 6
 The Wagners have filed a second motion to dismiss for lack of jurisdiction. The Wagners were discharged from bankruptcy proceedings by the Bankruptcy Court on December 31, 1993. Armstrong did not seek to stay the discharge pending this appeal, nor did he appeal the discharge. The Wagners thus contend that this appeal is moot. We disagree. A discharge under the bankruptcy code discharges "debts provided for by the plan." 11 U.S.C. Sec. 1228(a) (1988). Trustee's fees are not "debts provided for by the plan," but are fees levied for services provided in administering the plan. A claim against the debtors for trustee's fees is collateral to the bankruptcy action and the obligation to pay such fees is not relieved by a discharge from the bankruptcy proceedings. If we find that Armstrong's arguments have merit we may grant effective relief, and Armstrong's appeal thus is not moot.
 
 
 7
 We now turn to the merits of Armstrong's claim, using the same standard of review employed by the District Court. Miller v. Farmers Home Admin. (In re Miller), 16 F.3d 240, 242 (8th Cir.1994). We review de novo the Bankruptcy Court's legal conclusions and apply the clearly erroneous standard to its factual findings. Id. at 242-43.
 
 II.
 A.
 
 8
 Armstrong argues that the bankruptcy code precludes Chapter 12 plans from allowing debtors to make direct payments to impaired secured creditors. We disagree. In our view, the code does not prohibit plan provisions of this sort. Section 1226 governs payments made pursuant to a Chapter 12 bankruptcy plan. 11 U.S.C. Sec. 1226 (1988). Under this section, the trustee is required to make payments to creditors under the plan, "[e]xcept as otherwise provided in the plan or in the order confirming the plan." Id. Sec. 1226(c). Moreover, Section 1225, which sets out the requirements for a Chapter 12 plan, in addressing the treatment of secured claims refers to "property to be distributed by the trustee or the debtor under the plan." Id. Sec. 1225(a)(5)(B)(ii). When these two sections are read in conjunction, it becomes clear that the code does not forbid plan provisions allowing direct payments by the debtor to impaired secured creditors. Accord In re Erickson Partnership, 77 B.R. 738, 745 (Bankr.D.S.D.1987), aff'd, 83 B.R. 725 (D.S.D.1988), appeal dismissed, 871 F.2d 1092 (8th Cir.1988) (table); In re Hagensick, 73 B.R. 710, 713 (Bankr.N.D.Iowa 1987).
 
 
 9
 Armstrong relies heavily on Fulkrod v. Savage (In re Fulkrod), 973 F.2d 801 (9th Cir.1992) (per curiam), in which the Ninth Circuit held that a Chapter 12 debtor is not authorized to make direct payments to impaired secured creditors in order to avoid paying trustee's fees. In so holding, the Court emphasized the fee payment structure established by 28 U.S.C. Sec. 586. We believe the issue of whether a Chapter 12 plan may allow the debtor to make direct payments to impaired secured creditors is distinct from the issue of whether such payments are subject to trustee's fees. More important, the conclusion reached by the Ninth Circuit was not based upon a close textual analysis of the Chapter 12 statutes but upon policy grounds. The Court inferred that, because Congress requires the trustee to be financed by a percentage fee from the assets of the bankruptcy estate rather than by taxpayer funds, and because the trustee will receive nothing if the debtor is entitled to make direct payments to impaired creditors, Congress could not have intended debtors to make direct payments to creditors. We believe, however,that Congress's intent is best evidenced by the language of the laws Congress enacts, and we find nothing in the language of the code to support the Fulkrod court's reasoning.
 
 
 10
 As the bankruptcy code does not prohibit plan provisions allowing direct payments by Chapter 12 debtors to their impaired secured creditors, we need only determine if the confirmed plans of the debtors in the present case allow them to make such payments. The Chapter 12 plans of the Martins, the Hoffs, and the Lutes contain exactly the same provision for the payment of trustee fees:
 
 
 11
 1. Debtors hereby submit all present and future earnings (for the three years of this plan) to the supervision and control of the Trustee and agree to pay the Trustee a fee based on the secured payments to creditors in sections 5 and 6 at the same time the payments are made to the secured creditor. To the extent the trustee is not involved and a direct payment is made, no fee will be paid.
 
 
 12
 2. The debtors shall make disbursements in accordance with the terms of the plan, except for those required to be made by the trustee.
 
 
 13
 Appendix for Appellant at 15, 23, 31 (emphasis added). The Wagners' plan includes a similar provision, with identical language (except for a typographical error) in the last sentence of paragraph one and all of paragraph two. Id. at 8. Although the import of this language is not indisputable, we conclude that it permits the debtors to make direct payments to their secured creditors, principally because the last sentence of paragraph one would appear to lack meaning if not read as contemplating such payments.
 
 
 14
 Armstrong places particular emphasis on the last clause of paragraph two and argues that payments to impaired creditors are of the type "required to be made by the trustee." However, the plan nowhere defines what disbursements are encompassed by this language, nor is its meaning elucidated by reference to the bankruptcy code. Armstrong also has failed to proffer any evidence of the intent of the parties concerning the meaning of this phrase, and we decline to read into the provision the interpretation Armstrong desires.
 
 
 15
 In sum, we conclude that the debtors' plans permit them to make direct payments to their impaired secured creditors, and that these provisions of the plans are not in conflict with the bankruptcy code.
 
 B.
 
 16
 We turn to the question whether, despite the language of the plans excluding fees on direct payments by the debtors to their impaired secured creditors, trustee's fees nevertheless must be paid because the code, properly construed, requires them no matter what the plan may say. We again turn to the language of the governing statute. Under 28 U.S.C. Sec. 586, a standing trustee appointed under Chapter 12 receives a fee of up to "ten percent of the payments made under the plan" for aggregate payments not exceeding $450,000, and a fee of "three percent of payments made under the plan" for payments made after the aggregate amount of $450,000 is exceeded. 28 U.S.C. Sec. 586(e)(1)(B)(ii) (1988).
 
 
 17
 Armstrong argues that all payments to secured creditors whose claims are impaired by a Chapter 12 plan are "payments made under the plan," id., whether disbursed by the trustee or the debtor, and therefore trustee's fees are owing as to these transactions. However, Sec. 586(e)(1)(B)(ii) only establishes the fee structure for Chapter 12 standing trustees. It is Sec. 586(e)(2) that directs when trustee's fees are owing. Under this section, the trustee collects fees on "all payments received by [the trustee] under plans in [ ] cases under chapter 12 or 13 of title 11." Id. Sec. 586(e)(2) (1988) (emphasis added). This language supports the debtors' view that no fees are owing for disbursements made directly by a debtor to impaired creditors.
 
 
 18
 Our comparison of the language of Sec. 586(e)(2) with the language of the statute it replaced strongly bolsters this construction of the statute. Prior to the enactment of Chapter 12 and the amendment of Sec. 586, trustee's fees payable under Chapter 13 were governed by Sec. 1302(e), which provided that trustee's fees should be collected "from all payments under [Chapter 13] plans." 11 U.S.C. Sec. 1302(e) (1982). This wording gave rise to disputes similar to the one here, with Chapter 13 trustees arguing that fees were owing on disbursements made directly by debtors to impaired creditors because these were "payments under [the] plan." See e.g., Foster v. Heitkamp (In re Foster), 670 F.2d 478, 490-91 (5th Cir.1982). In 1986,[5] Congress replaced Sec. 1302(e) with Sec. 586(e)(2) and altered the language to require fees "from all payments received by" the trustee. Section 1202(d)(2) of Chapter 12, see 11 U.S.C. Sec. 1202 note (Supp. IV 1986), as originally enacted, mirrored the language of Sec. 1302(e), but Congress replaced Sec. 1202(d) almost immediately with Sec. 586(e)(2) when it placed administration of the standing trustee system of Chapters 12 and 13 under the United States trustee.[6] In light of the frequency with which disputes over trustee's fees under Chapter 13 were litigated prior to 1986, the revision is significant. See Yarnall v. Erickson Partnership (In re Erickson Partnership), 83 B.R. 725, 728-29 (D.S.D.1988) (analyzing the implications of the new language in Sec. 586(e)(2)); see also In re Wright, 82 B.R. 422, 423 (Bankr.W.D.Va.1988). We conclude that Sec. 586(e)(2) means what it says and requires trustee's fees only on those payments "received by" the trustee. Thus, these Chapter 12 plans, which preclude payment of trustee's fees "to the extent that the trustee is not involved and a direct payment is made," see e.g., Appendix at 15, do not conflict with the bankruptcy code and are valid. The debtors owe no fees to Armstrong for the debtors' direct payments to their impaired secured creditors.
 
 III.
 
 19
 The debtors, arguing that Armstrong's appeal to this Court was frivolous, request attorney fees and double costs under Federal Rule of Appellate Procedure 38. The argument advanced by Armstrong, which was supported by the Ninth Circuit's decision in Fulkrod, involves a complex issue of statutory interpretation that has required careful study by this Court. Although Armstrong's brief did not give us much assistance, we cannot say that his appeal was frivolous. The debtors' request is denied.
 
 IV.
 
 20
 For the reasons stated, the debtors' motions to dismiss Armstrong's appeal for lack of jurisdiction are denied. This Court having considered the appeal on its merits, the judgment of the District Court in favor of the debtors is affirmed. The debtors' request for attorney fees and double costs is denied.
 
 
 
 *
 The HONORABLE JOSEPH E. STEVENS, JR., Chief Judge, United States District Court for the Western District of Missouri, sitting by designation
 
 
 [1]
 Chapter 12 of Title 11 also is known as the Family Farmer Bankruptcy Act of 1986. With some exceptions, Chapter 12 is modeled after Chapter 13 but is available only to an individual family farmer and his or her spouse. See 11 U.S.C. Sec. 101 (1988 & Supp. V 1994)
 
 
 [2]
 The Honorable Patrick A. Conmy, Chief Judge, United States District Court for the District of North Dakota
 
 
 [3]
 An "impaired" secured creditor is one whose legal, equitable, or contractual rights have been diluted by the bankruptcy plan
 
 
 [4]
 Under Federal Bankruptcy Rule 8015, 11 U.S.C. app. Rule 8015 (1988), the time to appeal to the court of appeals is tolled during the pendency of a motion for rehearing. District of North Dakota Local Rule 12(g), which, as we point out in the text, was eliminated in 1992, restricted the availability of motions for rehearing, requiring the movant to seek leave of the district judge prior to filing the motion
 
 
 [5]
 Congress amended 28 U.S.C. Sec. 586 by way of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99-554, 100 Stat. 3088 (1986). However, the effective date of Sec. 586(e)(2) varied among the different judicial districts depending on when the United States trustee system became operational in those districts
 
 
 [6]
 Section 1202(d), see 11 U.S.C. Sec. 1202 (Supp. IV 1986), was a transitional provision intended to remain in effect in each judicial district only until the United States trustee system became operative in that district