Richard LYDICK, Chapter
12 Trustee, Appellant,

v.

Gordon D. CROSS, et al., Appellees.

No. 4:CV95–3217.

United States District Court,
D. Nebraska.

Nov. 9, 1995.

Victor E. Covalt, III, Woods, Aitken Law Firm, Lincoln, NE, for Richard K. Lydick.

Susan L. Knight, Assistant United States Attorney, Lincoln, NE, for Farmers Home Administration.

County of Dawson, Lexington, NE, Pro Se.

Kent D. Turnbull, Lincoln County Attorney, Child Support Enforcement Unit, North Platte, NE, for County of Lincoln.

Richard A. Birch, Nielsen, Birch Law Firm, North Platte, NE, for Gordon D. Cross, Gladys M. Cross.

MEMORANDUM AND ORDER ON
STANDING TRUSTEE'S
APPEAL

URBOM, Senior District Judge.

This case came before me on appeal by the Chapter 12 standing trustee from the United States Bankruptcy Court for the District of Nebraska pursuant to 28 U.S.C. §§ 158(a), 1334 (Supp. V 1993). The appellees are hus-band and wife family farmer co-debtors. The trustee has appealed, among others, the bankruptcy court's ruling that Chapter 12 allows debtors to make direct payments to creditors with impaired claims, bypassing the trustee and thereby denying him the fees to which he would be entitled under 28 U.S.C. § 586 (Supp. V 1993), were the payments made through him to the creditors. The United States Trustee has filed an amicus brief. Having carefully reviewed this matter, I now affirm.

## I. FACTS

The appellant, Richard K. Lydick, is the standing trustee in Chapter 12, family farmer bankruptcy reorganization cases, for the District of Nebraska. The appellees, Gordon and Gladys Cross, are co-debtors undergoing a Chapter 12 family farm bankruptcy. They commenced their bankruptcy by filing a voluntary petition on March 4, 1994. The debtors filed their original plan, filing 13, with the bankruptcy court on June 2, 1994, but the trustee and United States Attorney objected. The plan was amended twice, the second time, filing 41, to allow the debtors to pay secured creditors directly, avoiding the trustee. The trustee objected, filing 43, but the bankruptcy judge overruled the objections and approved the plan.

## II. STANDARD OF REVIEW

When the judgment of a bankruptcy court is reviewed by a district court, that court acts as an appellate court. "As with most appellate proceedings, the district court may review the bankruptcy court's legal conclusions *de novo*, but the bankruptcy court's findings of fact shall not be set aside unless clearly erroneous." *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987); FED. R.BANKR.P. 8013 (1994) (factual findings are examined under the clearly erroneous standard).

## III. LEGAL DISCUSSION

The first issue is whether a debtor may directly pay secured creditors whose claims have been impaired [1] by the Chapter

1. For the purposes of the bankruptcy laws an     "impaired" claim is a creditor's claim which has

12 bankruptcy plan, thereby avoiding paying the standing trustee's statutory fees. The trustee has raised sections 1222 and 1226 of Title 11 as provisions supporting his argument.

Title 11, U.S.C. § 1222 of the Bankruptcy Code deals with the contents of the Chapter 12 plan. As to whether the bankruptcy plan must contain a provision requiring the trustee to make all payments to creditors, Section 1222 is silent. It does require, however, that the debtor submit "all or such portion of future earnings or other future income . . . to the supervision and control of the trustee *as is necessary for the execution of the plan.*" 11 U.S.C. § 1222(a)(1) (emphasis added). No other language contained in Section 1222 either expressly permits the plan or prohibits it from providing that the debtor make direct payments to creditors.

Section 1226 governs payments made under Chapter 12 reorganization plans. That section provides that a trustee is to make payments to creditors under the plan, "*[e]x-cept as otherwise provided in the plan or in the order confirming the plan.*" *Id.* (emphasis added). A reading of the plain language of this section does not support the trustee's contention that he is the sole conduit, or source, for payments ·due under the confirmed plan. In fact, it suggests the opposite, that it is contemplated that other individuals may, at times, be responsible for making payments under the plan's terms.

In addition, 11 U.S.C. § 1225 (1994), which controls the confirmation of the debtor's plan by the court, contains a provision that also seems to contemplate a debtor's making direct payments to creditors. The relevant part of Section 1225(a)(5) deals with the plan's treatment of allowed secured claims and provides, as one of the factors determining confirmation, that the value of "property *to be distributed by the trustee or the debtor under the plan*" on account of a secured claim is not less than the allowed amount of the claim. 11 U.S.C. § 1225(a)(5)(B)(ii) (emphasis added). This language does not ap-pear in the corresponding provision of Chapter 13. *See* 11 U.S.C. § 1325(a)(5)(B) (1994). Its absence in Chapter 13, the bankruptcy chapter upon which Chapter 12 was modeled, and its inclusion in Chapter 12, I believe, is telling. It indicates that Congress considered that the debtor would be involved in making, at least, some payments.

Finally, as Section 1222(b)(9) permits the payment of secured debts after the trustee has been discharged, see 11 U.S.C. § 1228(e), it seems logical that someone other than the trustee will be making those long-term secured debt payments, at least after the plan concludes. Consistently, the debtor may make these payments throughout the life of the plan, as well as after it is terminated.

The Eighth Circuit Court of Appeals has held that a debtor may directly pay creditors whose secured claims are impaired. Its opinion in *Wagner v. Armstrong (In re Wagner),* 36 F.3d 723 (1994), is determinative of the matter now before me.

In *Wagner,* four "family farmer" couples sought Chapter 12 relief. Each of the couples' plans provided that secured creditors, whose claims were impaired by the plan, were to be paid directly by the debtors. The bankruptcy plans were confirmed by the court, but when the trustee moved to dismiss the bankruptcy action on grounds that the debtors had failed to pay the required trustee fees, the bankruptcy court granted the motions, ruling that a debtor may not pay impaired creditors directly and thereby avoid the trustee's fees.

The debtors appealed and the district court reversed. That court found, as I have done, that the Bankruptcy Code neither expressly prohibits nor permits direct payment of impaired claims by the debtor. It concluded that the plans had been confirmed with the language allowing direct payment and that language did not contradict the Bankruptcy Code. Therefore, it reversed the bankruptcy court's decision. It held that the payments were not subject to the trustee fees. The trustee appealed.

been modified in some manner by the debtor's bankruptcy plan. For example, a claim is "impaired" where the total amount to be repaid to a creditor under the plan is less than the amount owed at the time bankruptcy is filed, or where the period over which the debt is to be repaid is extended beyond its original term.

The court of appeals affirmed and held that Chapter 12 does not prohibit a debtor from making direct payments to secured creditors whose claims are impaired by the bankruptcy plan. *Wagner,* 36 F.3d at 727. The court did not reach this conclusion on grounds of *res judicata,* as the appellant contends (Trustee's Br. at 19.) [hereinafter Tr.'s Br. at "——".]. Instead, the court looked to the language of Chapter 12, including sections 1225 and 1226(c), two of the sections I, too, reviewed.

In *Wagner,* the court of appeals also concluded that the standing trustee was not entitled to any fees from the payments made directly by the debtor to the creditor. The court looked at 28 U.S.C. § 586, which deals with the United States Bankruptcy Trustee system, standing trustees, and their compensation. Under its provisions the standing trustee, in family farmer bankruptcy reorganizations, receives in fees up to 10% of the payments made that total $450,000, and 3% on all payments which exceed that amount. 28 U.S.C. § 586(e)(1)(B). However, these fees are only earned on the payments which the *trustee receives* under the plan. 28 U.S.C. § 586(e)(2).

The court rejected the idea that direct payments from debtor to creditor, even though never received by the trustee, were subject to the fees provided for in the statute. The court looked at the plain language of the statute and found that it was clear that fees were generated only on the payments the trustee actually received. *Wagner,* 36 F.3d at 727. The court noted that its holding was bolstered by comparing the current statute's language with that of its predecessor's, 11 U.S.C. § 1202(d)(2) (as enacted) (1986), which had mirrored 11 U.S.C. § 1302(e) (1986). Both sections provided that fees were earned on "all payments under ... [the] plan." That Congress enacted Section 586 to replace both of these sections was significant, the court said. *Wagner,* 36 F.3d at 727–28.

With respect to the Cross' case I find that the bankruptcy court did not err as a matter of law in finding that debtors may make direct payments to secured creditors, thus bypassing the trustee. The Code does not prohibit it and the Eighth Circuit has held that a debtor may do so. The trustee's contention that direct payment was pursued to deny him his fees may be true in part, but it also will make a substantial difference in the payments which the debtor must make over the life of the plan.

■ Further, I find that the bankruptcy court did not err as a matter of law in ruling that a standing trustee is not entitled to fees on payments made directly by the debtor to the creditor. Again, the language of Section 586(e)(2) is clear and the *Wagner* court has held it means exactly what it says. The trustee, as his second issue on appeal, has questioned whether the bankruptcy court's decision, which is in accord with *Wagner,* based on the facts in this case, is clearly erroneous. The court did not exhibit an erroneous view of the law, nor am I left with the firm conviction that a mistake has been committed.

■ The trustee is correct that in a number of those bankruptcy cases that have allowed direct payments by the debtor, the courts have undertaken an analysis of the circumstances supporting the decision. *See, e.g., In re Overholt,* 125 B.R. 202 (S.D.Ohio 1990) (four factor analysis); *In re Harris,* 107 B.R. 204 (Bankr.D.Neb.1989) (multifactor analysis); *In re Pianowski,* 92 B.R. 225 (Bankr.W.D.Mich.1988) (thirteen factor analysis). I cannot conclude that such a fact-intensive analysis is always required. The bankruptcy court was correct in concluding that the small number of creditors seems to favor direct payments. The two county-creditors are fully secured and why they did not object, whether from ignorance or otherwise, is unimportant. FmHA's likely sophistication does not need in this case a fact-intensive analysis.

■ I find the trustee's argument that the bankruptcy court had the "judicial authority to interfere with, set or control the compensation of the Chapter 12 Trustee" has little merit. (Tr.'s Br. at 1.) The trustee contends that the court's authority to determine on a case-by-case basis whether payments may be made directly by the debtor to secured creditors amounts to control over

compensation, an outcome which is prohibited by 11 U.S.C. § 326(b) (1994), with respect to standing trustees. These are two separate issues. The court's authority to do the former, granted to it by the language contained in the sections stated above and the decision in *Wagner,* is wholly different from the prohibition, set out in other sections of the Code, namely Section 326(b), against varying the standing trustee's compensation. Neither decision is controlling of the other, as different sections are at issue.

Section 326(b) prohibits a court from allowing compensation for a standing trustee in a Chapter 12 or 13 case other than in conformance with Section 586. The trustee argues that this is exactly what is happening when the bankruptcy court determines whether a debtor may make payments directly to his creditors. The amount of payments to be made by the trustee is reduced and so, too, his fee. I conclude, however, that the decision to allow direct payments is not a decision to vary the trustee's compensation, which is prohibited by Section 326(b).

In support of his position the trustee relies on *In re Schollett,* 980 F.2d 639 (10th Cir. 1992), a case from the Tenth Circuit. I find *Schollett* at best unpersuasive and at worst distinguishable. That case involved a confirmed Chapter 12 plan in which the debtors were to pay the standing trustee his statutory fee for payments made through him. *Schollett,* 980 F.2d at 640. However, the debtors refused to make the fee payments, because they thought them to be excessive, and the trustee then refused to make payments on their behalf to the creditors. *Id.* The district court, on appeal, reduced the statutory fee percentage from ten percent to five percent. *Id.* at 641. The trustee appealed the ruling and the court of appeals reversed, holding that Section 586 established the fee scale for standing trustees and that the district court did not have the authority to review that percentage for reasonableness. *Id.* at 645.

In the Cross' case, the court has not been asked to review, nor is it reviewing, the reasonableness of the fees to be paid to the trustee on the payments he makes on the debtors' behalf. The bankruptcy court is merely determining whether the debtor may make any direct payments. This is a different matter than whether the trustee's fee is proper in a specific case. It is true that the court's decision will have an incidental effect upon the total compensation which the trustee will receive in a particular case, but that is equally true with the size of the bankruptcy estate. The court has no authority to review the reasonableness of the fees according to 11 U.S.C. § 326(b). It is left to the Attorney General to establish the annual percentage fee to be awarded standing trustees. *See* 28 U.S.C. § 586(e).

■ Finally, the trustee argues that the bankruptcy judge erred as a matter of law in holding that 11 U.S.C. § 105(a) (1994), provides him the authority to "allow, deny, or control the payment of fees to the Chapter 12 trustee on a case by case basis by allowing or denying the debtors to make payments directly to their impaired creditors." (Tr.'s Br. at 1.) While the trustee is attempting to identify the issue as one in which the bankruptcy court has exceeded its statutory authority, I cannot characterize it as such.

Section 105 authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This is what the court has done in ruling that debtors may make direct payments. The trustee is correct when he argues that Section 105 does not provide substantive rights not contained in the Code. (Tr.'s Br. at 9–16.) However, in concluding that it has the authority under Section 105 to permit or prohibit debtors making direct payments, the court is actually implementing the Code's provisions and not adding to them.

The Code envisions that some cases may involve direct payments by the debtor, but provides no guidance on when this may be done. The bankruptcy court used the statute that provides it the authority to carry out the Code's purposes when, in this situation, the means to achieve those purposes are not clearly expressed. The opinion of the court may have been less than artful when it declared its authority extended to those provisions of the Code dealing with standing

trustee compensation, but the intent of the sentence is clear, that other sections of the Code may be enforced in order to make sure that the trustee is properly compensated under the provisions of Section 586. Again, the bankruptcy court's order went to the allowance of a debtor to make direct payments, something that the Code provides and only incidentally touches upon the trustee's compensation.

**IT IS ORDERED** that the order of United States Bankruptcy Judge John C. Minahan, Jr., of May 4, 1995, is affirmed in all respects.